**FLECK AND ASSOCIATES, INC., an Arizona Corporation, Plaintiff,**

v.

**The CITY OF PHOENIX, an Arizona Municipal Corporation, Defendant.**

**No. CV 04–1118–PHX–DGC.**

United States District Court, D. Arizona.

Feb. 11, 2005.

Paul Joseph Gattone, Tucson, AZ, for Plaintiff.

James Harden Hays, Esq, City of Phoenix Law Department, Phoenix, AZ, for Defendant.

## ORDER

CAMPBELL, District Judge.

Pending before the Court are Plaintiff's Motion for Preliminary Injunction (Doc. # 1) and Defendant City of Phoenix's Motion to Dismiss (Doc. # 5). For the reasons discussed below, the Court will grant the City's motion and deny Plaintiff's motion as moot.

### I. Background.

Plaintiff Fleck and Associates, Inc. ("Fleck") is a for-profit corporation. Fleck's complaint alleges the following relevant facts: Fleck owns and operates Flex, a gay men's social club in Phoenix, Arizona. (Comp.¶ 5). In addition to providing health club facilities, Flex rents rooms to members and users to engage in homosexual sexual activity. (Comp.¶¶ 10, 11, 13). Gay sexual activity occurs in other parts of the club as well. (Comp.¶ 13). Flex provides access to the club through six-month or yearly memberships as well as daily passes. (Comp.¶ 8). Many people enter Flex with daily passes. (Comp.¶ 8). Users of the club must provide identification and pay the required fee before entering. (Comp.¶ 9).

In 1998, the Phoenix City Council enacted Phoenix City Code ("PCC") § 23–54, which prohibits "the operation of a business for purposes of providing the opportunity to engage in ... or view ... live sex acts" (Doc. # 1 ¶ 3). Following enforcement of PCC § 23–54 against Flex, Fleck filed this lawsuit seeking preliminary and permanent injunctions on the ground that the code violates privacy and liberty rights under the United States Constitution (Doc. # 1). The City filed a Motion to Dismiss on June 24, 2004 (Doc. # 5).

### II. Motion to Dismiss.

The City argues that Fleck lacks standing to assert the rights of its members,

lacks standing to assert its own rights, and fails to state a claim upon which relief can be granted. *See* FRCP 12(b)(6). The Court will address each argument in turn.

## A. Fleck's Standing to Represent Its Members.

■ Fleck's complaint alleges that the City's enforcement of PCC § 23–54 violates the "privacy rights of Plaintiff as well as the members and users of their facility...." (Comp.¶ 31). Before addressing whether Fleck has standing to assert its own rights, the Court will address whether it has standing to assert the rights of its "members."

The Supreme Court has held that certain representative organizations have standing to bring suit on behalf of their members

> [W]e have recognized that an association has standing to bring suit on behalf of its members when: (a) its members would otherwise have standing to sue in their own right; (b) the interests it seeks to protect are germane to the organization's purpose; and (c) neither the claim asserted nor the relief requested requires the participation of individual members in the lawsuit.

*Hunt v. Washington State Apple Advertising Comm'n,* 432 U.S. 333, 343, 97 S.Ct. 2434, 53 L.Ed.2d 383 (1977). *See also Thinket Ink Info. Res., Inc. v. Sun Microsystems, Inc.,* 368 F.3d 1053, 1059 (9th Cir.2004). By its terms, this three-part test applies to "an association" that has "members." The Supreme Court's additional discussion in *Hunt* identifies the characteristics of such an organization.

*Hunt* concerned the Washington State Apple Advertising Commission ("Commission"), a state-created association of apple growers and dealers. In holding that the Commission had standing to assert the rights of its members, the Supreme Court not only applied the three-part test set forth above, but also made clear that the apple growers and dealers represented by the Commission possessed "all of the indicia of membership in an organization." *Id.* at 344, 97 S.Ct. 2434. Specifically:

> They alone elect members of the Commission; they alone may serve on the Commission; they alone finance its activities, including the costs of this lawsuit, through assessments levied upon them. In a very real sense, therefore, the Commission represents the State's growers and dealers and provides the means by which they express their collective views and protect their collective interests.

*Id.* at 344–345, 97 S.Ct. 2434.

Several district court cases have held that *Hunt*'s three-part test for associational standing applies only to organizations that possess these traditional characteristics of a representative association. *See, e.g., Group Health Plan, Inc. v. Philip Morris Inc.,* 86 F.Supp.2d 912, 917–18 (D.Minn.2000) ("Before undertaking the *Hunt* tripartite analysis ... the Court must first determine whether the plaintiff is the type of organization capable of asserting associational standing"); *Allstate Ins. Co. v. City of Chicago,* 2003 WL 1877670, at *3, 2003 U.S. Dist. LEXIS 6180, at *10–11 (N.D.Ill., Apr. 14, 2003) ("Before considering the [*Hunt*] factors above, the threshold question is whether the insurance companies even qualify as an association and its insureds as members"); *Clonlara, Inc. v. Runkel,* 722 F.Supp. 1442, 1449–51 (D.Mich.1989) (addressing whether non-profit corporation can assert rights of its customers).

While the Commission at issue in *Hunt* may have constituted an organization that truly represented its members' interests, these district court cases have recognized that other organizations do not. *Group Health* held that certain health mainte-

nance organizations were not traditional representative organizations. Rather, "the relationship between [the HMOs] and their 'members' is most aptly described as that of a business-consumer relationship, which is readily distinguishable from the traditional association-member relationship necessary to support an assertion of associational standing." 86 F.Supp.2d at 918.

Likewise, *Allstate* held that insurance companies were not representative of their insureds in the same sense as traditional membership organizations, but instead possessed a "business-consumer relationship whereby the insured purchases insurance from the [insurance company] for coverage against certain losses." 2003 WL 1877670, at *3, 2003 U.S. Dist. LEXIS 6180, at *12. Because the "insureds had no input as to how the plaintiffs run their business or who is in control," and the insurance companies "are not a forum for the insureds to otherwise express their views or have their interest in a clean environment protected," the Court held that the insurance companies were not representative associations entitled to *Hunt* associational standing. *Id.*, 2003 WL 1877670, at *3, 2003 U.S. Dist. LEXIS 6180, at *12–13.

The plaintiff in *Clonlara* was a nonprofit corporation that sold home-school educational materials to parents. The court held that the parents, although called "members," "merely purchase a service from Clonlara; they are customers." 722 F.Supp. at 1451. The court noted that the parents did not elect members of Clonlara's board, could not serve on the board, and did not finance Clonlara's activities such as the costs of litigation. The court accordingly concluded that Clonlara could

not assert the kind of standing recognized in *Hunt. Id.*[1]

Like the organizations at issue in *Allstate, Group Health*, and *Clonlara*, Fleck does not possess standing to assert the rights of its customers. Although Fleck refers to its patrons as "members," its complaint makes clear that they are customers. Individuals patronizing Fleck's club may purchase "memberships" on an annual, semi-annual, or even daily basis. Other than producing identification and paying the necessary entrance fee, no requirements of membership are imposed. Fleck's complaint does not suggest that its customers elect Fleck's board of directors or corporate officers, choose other members, finance Fleck's litigation activities (other than through paying an entrance fee), or look to Fleck to represent their interests. *See Hunt*, 432 U.S. at 345, 97 S.Ct. 2434. Rather, like the organizations at issue in *Allstate, Group Health*, and *Clonlara*, the relationship between Fleck and its "members" is most aptly described as that of a business-consumer relationship readily distinguishable from the traditional association-member relationship necessary to support an assertion of associational standing. *C.f.* 13 Wright, Miller & Cooper, Federal Practice and Procedure, Jurisdiction 2d § 3531.9, at 612 (2d. ed.1984) ("an ordinary commercial corporation, for example, generally should not be permitted to borrow standing from injured stockholders.").

Fleck has the burden of pleading sufficient facts to support standing. "The elements of standing are 'an indispensable part of [Plaintiff's] case,' and accordingly must be supported at each stage of litigation in the same manner as any other

---

1. A district court in this circuit has applied associational standing to a sportfishing alliance. *See California Sportfishing Protection Alliance v. Diablo Grande, Inc.*, 209 F.Supp.2d 1059 (E.D.Cal.2002). That court noted, however, that "Defendant presents no evidence Plaintiff is not a traditional voluntary membership organization." *Id.* at 1066.

essential element of the case." *Warren v. Fox Family Worldwide, Inc.,* 328 F.3d 1136, 1140 (9th Cir.2003) (citing *Cent. Delta Water Agency v. United States,* 306 F.3d 938, 947 (9th Cir.2002)). "At this stage of the pleading, [Plaintiff] need only show that the facts alleged, if proved, would confer standing upon him." *Id.* (citing *Steel Co. v. Citizens for a Better Environment,* 523 U.S. 83, 104, 118 S.Ct. 1003, 140 L.Ed.2d 210 (1998)). "If the pleadings establish facts compelling a decision one way," however, "that is as good as if depositions and other ... evidence on summary judgment establish the identical facts." *Weisbuch v. County of L.A.,* 119 F.3d 778, 783, n. 1 (9th Cir.1997). *See also Assoc. Gen. Contractors of Cal. v. Cal. State Council of Carpenters,* 459 U.S. 519, 526, 103 S.Ct. 897, 74 L.Ed.2d 723 (1983) (district court need not assume that plaintiff can prove facts different from those alleged in the complaint). The specific facts alleged in Fleck's complaint make clear that Fleck is not the kind of organization that can assert third-party standing for its members.[2]

### B. Fleck's Standing to Assert its Own Rights.

■ The City additionally argues that Fleck as a corporation lacks standing to assert its own rights because Fleck's complaint does not sufficiently describe the physical entity and location that would suffer harm from the enforcement of PCC § 23–54. The Court finds the complaint sufficient in its description of Fleck. The complaint alleges that Fleck is an Ohio corporation doing business in Phoenix, Arizona.[3] This allegation is sufficient under Rule 8 notice pleading. Fleck is not required to buttress the allegation with specific information regarding its address or legal status as a corporation. *See Peloza v. Capistrano Unified Sch. Dist.,* 37 F.3d 517, 521 (9th Cir.1994) (holding that the court must assume that all general allegations "embrace whatever specific facts might be necessary to support them"). Fleck has standing to assert its own rights as a corporation.

### C. Failure to State a Claim.

■ When analyzing a complaint for failure to state a claim, "[a]ll allegations of material fact are taken as true and construed in the light most favorable to the non-moving party." *Smith v. Jackson,* 84 F.3d 1213, 1217 (9th Cir.1996). Legal conclusions couched as factual allegations are not given a presumption of truthfulness and "conclusory allegations of law and un-

---

2. Some courts have recognized *jus terti* standing, which allows a plaintiff to assert standing for a third party where the plaintiff has "a close relationship with the party whose rights it is asserting" and "there [is] some hindrance to the third party's ability to protect his or her own interests." *Voigt v. Savell,* 70 F.3d 1552, 1564 (9th Cir.1995) (citation omitted). Fleck does not assert that it has a close relationship with its patrons. *See id.* at 1565 (citing *Griswold v. Connecticut,* 381 U.S. 479, 481, 85 S.Ct. 1678, 14 L.Ed.2d 510 (1965) (holding that a physician had standing to raise the constitutional rights of her patients, emphasizing their close and confidential relationship); *NAACP v. Alabama,* 357 U.S. 449, 458–59, 78 S.Ct. 1163, 2 L.Ed.2d 1488 (1958) (holding that NAACP had standing to assert rights of its members because the NAACP and its members were in every practical sense identical)). The allegations of the complaint suggest no similar confidentiality or identity overlap between Fleck and its customers. Nor does Fleck argue that its customers suffer any hindrance in their ability to assert their own rights. *See Viceroy Gold Corp. v. Aubry,* 75 F.3d 482 (9th Cir.1996) ("A simple lack of [economic] motivation does not constitute a 'genuine obstacle' to asserting an interest").

3. The caption of Plaintiff's Complaint states that Fleck is an Arizona corporation, but paragraph 5 alleges that it is "an Ohio based corporation licensed to transact business in the State of Arizona."

warranted inferences are not sufficient to defeat a motion to dismiss." *Pareto v. F.D.I.C.,* 139 F.3d 696, 699 (9th Cir.1998).

Fleck claims that the City's enforcement of PCC § 23–54 violates Fleck's privacy and liberty rights. The complaint alleges that Flex is a "private" club and that the sexual activities that take place there are also "private." (Comp.¶ 31). The complaint also alleges that PCC § 23–52 "criminalize[s] private, consensual homosexual acts in violation of the liberty guarantee of the Due Process Clause . . . ." (Comp.¶ 30).

As noted above, however, Fleck has standing to assert only its rights as a corporation, and a corporation cannot assert Constitutional privacy rights. "In the words of Chief Justice Marshall, a corporation is 'an artificial being, invisible, intangible, and existing only in contemplation of law.'" *Browning–Ferris Indus. v. Kelco Disposal, Inc.,* 492 U.S. 257, 284, 109 S.Ct. 2909, 106 L.Ed.2d 219 (1989) (quoting *Dartmouth College v. Woodward,* 4 Wheat. 518, 636, 4 L.Ed. 629 (1819)). "As such, it is not entitled to 'purely personal guarantees' whose 'historic function' . . . has been limited to the protection of individuals." *Id.* (quoting *First National Bank of Boston v. Bellotti,* 435 U.S. 765, 779, n. 14, 98 S.Ct. 1407, 55 L.Ed.2d 707 (1978)). "Thus, a corporation has no . . . right to privacy . . . ." *Id.* (citing *United States v. Morton Salt Co.,* 338 U.S. 632, 70 S.Ct. 357, 94 L.Ed. 401 (1950)).

 Moreover, even if Fleck could assert the privacy rights of the individuals who frequent its club, dismissal would be required. Fleck's club simply is not a setting where Constitutional privacy rights exist.[4]

This Court previously addressed enforcement of PCC § 23–54 against "swingers" clubs in Phoenix and concluded that § 23–54 did not violate any cognizable privacy rights. *See Recreational Devs. of Phoenix, Inc., v. City of Phoenix,* 220 F.Supp.2d 1054, 1067 (D.Ariz.2002) (citing earlier proceeding at *Recreational Devs. of Phoenix, Inc. v. City of Phoenix,* 83 F.Supp.2d 1072, 1082–84 (D.Ariz.1999)), *aff'd, Recreational. Devs. of Phoenix v. City of Phoenix,* 77 Fed. Appx. 983 (9th Cir.2003). While *Recreational Developments* does not control this case, the Court finds its reasoning persuasive.

The Supreme Court has held that Due Process protects the privacy of sexual activities between consenting adults in the home or other private places. *See Lawrence v. Texas,* 539 U.S. 558, 562, 123 S.Ct. 2472, 156 L.Ed.2d 508 (2003) ("Liberty protects the person from unwarranted government intrusions into a dwelling or other private places."). The Court has also made clear, however, that this protection is limited to activities that occur in private. *See Paris Adult Theatre I v. Slaton,* 413 U.S. 49, 65–66, 93 S.Ct. 2628, 37 L.Ed.2d 446 (1973) (declining "to equate the privacy of the home . . . with a 'zone' of 'privacy' that follows [an individual] wherever he goes"). In order for Due Process privacy rights to apply at Fleck's club, the club and the activities that occur there must truly be private. *See id.* at 66, 93 S.Ct. 2628 ("The idea of a 'privacy' right and a place of public accommodation are, [in the context of sexual activities], mutually exclusive").

The allegations of Fleck's complaint make clear that Fleck's club is not private. *See Weisbuch,* 119 F.3d at 783, n. 1("If the

---

4. The Court addresses this issue in the interest of judicial economy. If Fleck appeals the dismissal of its complaint and the appellate court concludes that Fleck does have standing to assert its members' privacy rights, the appellate court can also review the Court's analysis of the privacy issue.

pleadings establish facts compelling a decision one way, that is as good as if depositions and other ... evidence on summary judgment establishes the identical facts"); *Assoc. Gen. Contractors of Cal.,* 459 U.S. at 526, 103 S.Ct. 897 (district court need not assume that plaintiff can prove facts different from those alleged in the complaint). Courts use several factors to determine whether a club is private and merits Constitutional protection, "including the selectivity of membership, membership control over the operations of the establishment, the history of the organization, the use of facilities by non-members, the purpose of the club's existence, whether the club advertises for new members, whether the club is profit or non-profit, and whether the club uses formalities such as bylaws, meetings, and membership cards." *Recreational Devs.,* 83 F.Supp.2d at 1082 (citing *United States v. Lansdowne Swim Club,* 713 F.Supp. 785, 796–97 (E.D.Pa.1989); *Welsh v. Boy Scouts of America,* 993 F.2d 1267, 1276 (7th Cir. 1993); *Hendricks v. Commonwealth,* 865 S.W.2d 332 (Ky.1993) (concluding that a membership organization offering nude dancing was not a private club)). "The case law provides that the most important of these factors is membership selectivity." *Id.* (citing *Welsh,* 993 F.2d at 1276; *Brounstein v. American Cat Fanciers Assoc.,* 839 F.Supp. 1100, 1106 (D.N.J.1993) (noting that "the touchstone of the determination of whether a membership organization is a 'place of public accommodation' is its selectivity in the admission of its members"); *Lansdowne Swim Club,* 713 F.Supp. at 797 (same); *Brown v. Loudoun Golf & Country Club,* 573 F.Supp. 399, 403 (E.D.Va.1983) (noting that "the key factor is whether the club's membership is truly selective")).

Fleck's membership requirements, as alleged in the complaint, are not sufficiently selective to qualify its club as private. Adults desiring to enter the club may do so by providing identification and paying the daily, six-month, or yearly membership rate, with "many" people entering the club on a daily basis. (Comp.¶¶ 8, 9). Fleck's requirements are no more restrictive than those of the public swingers clubs in *Recreational Developments*

> In the instant case, the degree of selectivity of membership by the club falls far short.... Membership criteria is virtually non-existent. An individual wishing to attend a social club simply arrives at the club, provides the club with his or her name, address, age, and minimal other information, pays a small fee, and is generally immediately given a membership card....

*Recreational Devs.,* 83 F.Supp.2d at 1083.

Fleck's membership requirements differ from clubs found to be private and warranting Constitutional protection. In *Kiwanis International v. Ridgewood Kiwanis Club,* 806 F.2d 468 (3d Cir.1986), for example, the court found a club private based on the club's rigorous and restrictive membership requirements. The club was limited to men, consisted of only twenty-eight members, ten of whom had been members for over twenty years, admitted no more than twenty members over the course of the previous decade, and required that each new member be sponsored by a current member and formally approved by vote of the club's board of directors. *Id.* at 475. The fact that "many" people enter Fleck's club each day is alone sufficient to disqualify it from the kind of consideration afforded the club in *Kiwanis.* Indeed, the membership criteria of Fleck's club are even less restrictive than those of some clubs deemed "public" by the courts. *See, e.g., Lansdowne Swim Club,* 713 F.Supp. at 805 (swimming club's membership criteria were insufficiently selective despite the fact that the club "require[d] substantial membership fees,

place[d] a limit on the number of shareholder members, utilize[d] a formal admission procedure that ha[d] been controlled by the shareholder members since 1978 ... and interview[ed] ... potential members" before admittance).

Fleck argues that *Lawrence v. Texas*, decided by the Supreme Court after this Court's decision in *Recreational Developments*, requires a different result. In striking down a Texas sodomy law, *Lawrence* held that Due Process privacy rights extend to private, consensual, homosexual activities. 539 U.S. at 578–79, 123 S.Ct. 2472. As stated in *Lawrence*, however, the protection applies to activities that are "private." *Id. Lawrence* does not suggest that sexual activities in a place of public accommodation are Constitutionally protected. Because Fleck's club is not private, the sexual activities that take place there likewise are not private. *See Ellwest Stereo Theatres, Inc. v. Wenner*, 681 F.2d 1243, 1248 (9th Cir.1982) (holding that otherwise unobserved masturbation was not private in the context of a place of public accommodation); *Lawrence*, 539 U.S. at 567, 123 S.Ct. 2472 ("The liberty protected by the Constitution" to pursue "overt expression in intimate conduct with another person" is limited to "[individuals'] homes and their own private lives").

In sum, because Fleck as a corporation enjoys no privacy rights, and because the privacy rights of Fleck's members, even if assertable by Fleck, do not exist in Fleck's public social club, Fleck's complaint fails to state a claim for violation of Constitutional privacy rights. The Court will grant the City's Motion to Dismiss.

### III. Motion for Preliminary Injunction.

With the complaint dismissed, Fleck's motion for preliminary injunction is moot.

**IT IS ORDERED**

1. Plaintiff's Motion for Preliminary Injunction (Doc. # 1) is **denied as moot.**

2. Defendant City of Phoenix's Motion to Dismiss (Doc. # 5) is **granted.**

3. Plaintiff's Complaint (Doc. # 1) is **dismissed with prejudice.**

4. The Clerk shall **terminate this action.**