**FOR PUBLICATION**

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

FLECK AND ASSOCIATES, INC., an
Arizona corporation,
        *Plaintiff-Appellant,*

v.

PHOENIX, CITY OF, an Arizona
municipal corporation,
        *Defendant-Appellee.*

No. 05-15293

D.C. No.
CV-04-01118-PHX-
DGC

OPINION

Appeal from the United States District Court
for the District of Arizona
David G. Campbell, District Judge, Presiding

Submitted December 8, 2006*
San Francisco, California

Filed December 22, 2006

Before: Dorothy W. Nelson, Robert E. Cowen,** and
Marsha S. Berzon, Circuit Judges.

Opinion by Judge D. W. Nelson

---

*This panel unanimously finds this case suitable for decision without
oral argument. *See* Fed. R.App. P. 34(a)(2).

**The Honorable Robert E. Cowen, Senior United States Circuit Judge
for the Third Circuit, sitting by designation.

19683

## COUNSEL

Paul Gattone, Tucson, Arizona, for the appellant.

James H. Hays, Assistant City Attorney, Phoenix, Arizona, for the appellee.

## OPINION

D. W. NELSON, Senior Circuit Judge:

This is a challenge, based on the constitutional right of privacy, to an ordinance prohibiting the operation of "live sex act" businesses in Phoenix, Arizona ("Phoenix" or "the city"). Appellant Fleck and Associates, Inc. ("Fleck") runs such an establishment and appeals the district court's order dismissing its complaint with prejudice.[1] The district court correctly determined Fleck lacked standing to assert any cognizable privacy rights under the allegations in its complaint. However, the court improperly proceeded to reach the merits of the underlying suit, determining that Fleck's customers could not state a claim for relief under any conceivable set of facts. Because Fleck lacked standing to assert either its own putative privacy rights or the interests of its customers, the district court lacked subject matter jurisdiction and should have dismissed the complaint on that ground alone. We therefore disapprove of the district court's undertaking on the merits and hereby vacate the district court's order and remand with instructions to dismiss the complaint without prejudice.

## FACTUAL AND PROCEDURAL BACKGROUND[2]

Fleck is a for-profit corporation that operates Flex, a gay men's social club in Phoenix, Arizona. The club limits access to adults who have purchased "memberships" on a yearly,

[1]*Fleck & Assocs., Inc. v. City of Phoenix*, 356 F. Supp. 2d 1034 (D. Ariz. 2005).

[2]For the purpose of reviewing the motion to dismiss for want of standing, all factual representations are drawn from Fleck's complaint and assumed to be true. *See Warth v. Seldin*, 422 U.S. 490, 501 (1975).

semi-yearly, or daily basis. Many people enter the club by purchasing daily passes. Customers can rent private dressing rooms for an additional fee. Sexual activities take place in the dressing rooms and in other areas of the club.

In 1998, the city banned "live sex act business[es]" defined as those "in which one or more persons may view, or may participate in, a live sex act for a consideration." PHOENIX, Az., CODE § 23-54(B)(3) & (C). In January 2004, police officers entered Flex, searched its office, questioned two employees and detained them overnight. Fleck has been threatened with similar actions.

On June 2, 2004, Fleck filed suit in the District of Arizona seeking injunctive and declaratory relief on the ground the above-described governmental conduct "violated the privacy rights of Plaintiff as well as the members and users of their [sic] facility in violation of the Due Process Clause as codified in the Fifth and Fourteenth Amendments." The complaint did not allege Fleck suffered any injury other than the invasion of its supposed privacy interests. Fleck and Associates, Inc. was the only named plaintiff.

The city filed a motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(1) and (6). On February 15, 2005, the district court granted the motion, ordered the complaint dismissed with prejudice, and entered judgment for the city. The court treated the complaint as raising two distinct claims, one predicated on an invasion of the rights of Fleck's customers ("the customers' claim") and another based on the invasion of Fleck's rights as a corporation ("the corporate claim").

The court correctly found Fleck lacked standing to assert the rights of its customers. However, the court also opted, "in the interest of judicial economy," *Fleck & Assocs. Inc.*, 356 F. Supp. 2d at 1039 n.4, to discuss the merits, deciding that "the privacy rights of Fleck's members . . . do not exist in Fleck's public social club." *Id.* at 1041. The district court

therefore dismissed the customers' claim on the alternative grounds that Fleck lacked standing to bring it or that it failed as a matter of law given the nature of the right to privacy. Because Fleck lacked standing to assert its customers' rights, the district court lacked subject matter jurisdiction over the claim and should have dismissed on that basis without discussing the merits.

As to the second claim, the court held Fleck enjoyed standing to assert its own rights as a corporation. *Id*. at 1038. The court did not, however, identify what those corporate rights might have been. Instead, it immediately proceeded to hold that Fleck lacked any cognizable privacy rights and dismissed for failure to state a claim. *Id*. at 1039, 1041. Because Fleck failed to allege the invasion of any cognizable corporate right, it similarly lacked standing to raise the corporate claim. Therefore, this claim should also have been dismissed for lack of subject matter jurisdiction.

## DISCUSSION

### I.   Standard of Review

Whether a party lacks standing is a legal issue subject to *de novo* review. *Hong Kong Supermarket v. Kizer*, 830 F.2d 1078, 1080 (9th Cir. 1987).

### II.   Standing

#### A.   "Traditional" (Non-Associational) Standing

Standing doctrine involves " 'both constitutional limitations on federal-court jurisdiction and prudential limitations on its exercise.' " *Kowalski v. Tesmer*, 543 U.S. 125, 128-29 (2004) (quoting *Warth v. Seldin*, 422 U.S. 490, 498 (1975)). The constitutional aspect inquires "whether the plaintiff has made out a 'case or controversy' between himself and the defendant within the meaning of Art[icle] III" by demonstrat-

ing a sufficient personal stake in the outcome. *Warth*, 422 U.S. at 498. The prudential limitations, in contrast, restrict the grounds a plaintiff may put forward in seeking to vindicate his personal stake. *Id*. at 499. Most important for our purposes is that "a litigant must normally assert his own legal interests rather than those of third parties." *Phillips Petroleum Co. v. Shutts*, 472 U.S. 797, 804 (1985) (citations omitted).

**[1]** The constitutional limitations require a litigant to allege "(1) a threatened or actual distinct and palpable injury to [himself]; (2) a fairly traceable causal connection between the alleged injury and the . . . challenged conduct; and (3) a substantial likelihood that the requested relief will redress or prevent the injury." *Hong Kong Supermarket*, 830 F.2d at 1081 (citations omitted).

**[2]** The first of these elements, sometimes described as "injury in fact," necessitates a showing of "an invasion of a legally protected interest" that "affect[s] the plaintiff in a personal and individual way." *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560 & n.1 (1992). A plaintiff seeking to invoke federal court jurisdiction must plead that *he* has suffered some cognizable injury to make the threshold showing of a case or controversy. *Vt. Agency of Natural Res. v. United States ex rel. Stevens*, 529 U.S. 765, 771 (2000) ("[T]he Art[icle] III judicial power exists only to redress or otherwise to protect against injury *to the complaining party*." (quoting *Warth*, 422 U.S. at 499)).

Fleck has failed to plead an injury in fact. According to the complaint, the only harm that has allegedly befallen Fleck & Associates Inc. is that its "privacy rights" were violated when the city "criminalized private, consensual homosexual sexual acts" by enacting and enforcing § 23-54. However, as the district court correctly held, corporations have no such privacy rights. Since Fleck has not alleged the invasion of any cognizable right, it has failed to establish the "irreducible constitutional minimum of standing." *Lujan*, 504 U.S. at 560.

**[3]** "[C]orporations can claim no equality with individuals in the enjoyment of a right to privacy." *United States v. Morton Salt Co.*, 338 U.S. 632, 652 (1950); *see also Browning-Ferris Indus. v. Kelco Disposal, Inc.*, 492 U.S. 257, 284 (1989) (O'Connor, J., concurring in part, dissenting in part) ("[A] corporation has no . . . right to privacy."). More generally, a corporation is not entitled to " 'purely personal' guarantees" — those rights that have historically been granted to protect individuals. *First Nat'l Bank of Boston v. Bellotti*, 435 U.S. 765, 778 n.14 (1978). An analysis of the "nature, history, and purpose," *id.*, of the constitutional guarantee at issue demonstrates that it is "purely personal" and therefore incapable of being claimed by a corporation.

Fleck squarely identifies the source of its supposed right as the liberty guarantee described in *Lawrence v. Texas*, 539 U.S. 558 (2003). The *Lawrence* Court, however, was concerned with "the autonomy of the person" to make choices about intimate relationships free from governmental stigmatization or sanction. *Id.* at 574. "At the heart of liberty is the right to define one's own concept of existence, of meaning, of the universe, and of the mystery of human life." *Id.* (quoting *Planned Parenthood of Se. Pa. v. Casey*, 505 U.S. 833, 851 (1992)). The *Lawrence* Court held that due process requires "respect for [the petitioners'] private lives [such that t]he State cannot demean their existence or control their destiny by making their private sexual conduct a crime." *Id.* at 578.

**[4]** It is hard to imagine a constitutional guarantee that could be more inherently personal and therefore unavailable to a corporate entity, "an artificial being, invisible, intangible, and existing only in contemplation of law." *Dartmouth College v. Woodward*, 17 U.S. (4 Wheat.) 518, 636 (1819). Corporations are not self-defining autonomous creatures worthy of respect and dignity in the relevant sense. Neither do they have private lives, let alone "private lives in matters pertaining to sex" as Fleck would have it. Because the right to privacy described in *Lawrence* is purely personal and

unavailable to a corporation, Fleck failed to allege an injury in fact sufficient to make out a case or controversy under Article III.

Nevertheless, Fleck claims that the "inherently personal right of homosexual sexual activity is central to the function and operation of [its] facility," and that this somehow means Fleck has a liberty interest protected by the due process clause to run a "facility devoted to providing a safe location for homosexuals to express their sexuality." Essentially, Fleck argues that it has a right to *facilitate* the exercise of the admittedly personal "right of homosexual sexual activity."

[5] This argument is really just a claim that Fleck should be allowed to champion the liberty interests of its customers. Under traditional standing doctrine, a party meeting the constitutional requirements of injury, causation, and redressibility, may, on rare occasions, "act[ ] as [an] advocate[ for] the rights of third parties," *Craig v. Boren*, 429 U.S. 190, 195 (1976), if he can overcome the prudential rule limiting the grounds for relief. However, exceptions to the prudential rule presuppose a litigant who has *already* met the constitutional requirements. *See Kowalski*, 543 U.S. at 128-29 (reiterating that constitutional standing limits are separate and distinct from prudential rule against asserting third-party rights). Since Fleck has failed to allege a cognizable personal injury, the prudential limits on "third-party standing" are beside the point.[3]

---

[3]Even if Fleck had alleged an "injury in fact" and the other constitutionally required elements of standing, it could not rely on the interests of its customers under the allegations in the complaint. Exceptions to the prudential rule are disfavored and a party seeking to champion the rights of third persons must demonstrate that, "[f]irst, [it] has a 'close' relationship with the person who possesses the right . . . [and s]econd . . . there is a 'hindrance' to the possessor's ability to protect his own interests." *Kowalski*, 543 U.S. at 130 (citations omitted). Fleck has alleged neither condition.

### B.   Associational Standing

**[6]** Under the doctrine of "associational" or "representational" standing an organization may bring suit on behalf of its members whether or not the organization itself has suffered an injury from the challenged action. *Hunt v. Wash. State Apple Adver. Comm'n*, 432 U.S. 333, 342-44 (1977). The district court directed most of its standing analysis to this doctrine and correctly held that Fleck has no associational standing to assert the rights of its customers. *Fleck & Assocs. Inc*, 356 F. Supp. 2d at 1036-38.

To obtain associational standing, the entity must show that (1) at least one of its members would have standing to sue in his own right, (2) the interests the suit seeks to vindicate are germane to the organization's purpose, and (3) neither the claim asserted nor the relief requested requires the participation of individual members in the lawsuit. *United Food & Commercial Workers Union Local 751 v. Brown Group, Inc.*, 517 U.S. 544, 553 (1996) (citing *Hunt*, 432 U.S. at 343).

**[7]** Fleck's complaint fails to demonstrate associational standing. First, Fleck does not have any "members" in the sense required by the doctrine. Associational standing is reserved for organizations that "express the[ ] collective views and protect the[ ] collective interests" of their members. *Hunt*, 432 U.S. at 345. Here, the allegations in the complaint make clear that "members" of Flex are merely customers. Fleck does not allege that its customers in any way have come together to form an organization for their mutual aid and benefit. *Cf. Int'l Union, United Auto., Aerospace, & Ag. Implement Workers of Am. v. Brock*, 477 U.S. 274, 290 (1986) ("[T]he doctrine of associational standing recognizes that the primary reason people join an organization is often to create an effective vehicle for vindicating interests that they share with others."). Second, the *purpose* of the "association" here (Fleck & Associates, Inc.) is to turn a profit. Fleck's suit seeks to vindicate the putative privacy interests of its customers.

This is clearly not germane to the purpose of the organization. *Cf. Id.* at 286 (where union's constitution announced goal of establishing social and unemployment insurance funded by government and private employers, suit seeking to vindicate union members rights' under Trade Act of 1974 was germane to organizational purpose); *Hunt*, 432 U.S. at 344 (association created for purpose of protecting and promoting Washington state apple industry may seek to vindicate its members' commercial interests).

## III. Conclusion

**[8]** As presently constituted, the complaint fails to demonstrate that Fleck suffered a distinct and palpable injury to any cognizable corporate right. In addition, Fleck does not have associational standing to assert the rights of its customers. Therefore, under the allegations in the complaint, the district court lacked subject matter jurisdiction over the entirety of Fleck's complaint and erred by reaching the merits.[4] We therefore vacate the district court's order and remand with instructions to dismiss without prejudice. *See Steel Co.* 523 U.S. at 94 (if court lacks jurisdiction it is powerless to reach

---

[4]Fleck contends alternatively that even if it lacks "formal" standing to sue, this court should reach the merits on the theory that the constitutional issue presented is gravely important. Aside from the fact that Fleck cites no authority for this position, it neglects that standing is an aspect of subject matter jurisdiction and that, no matter how important the issue, a court lacking jurisdiction is powerless to reach the merits under Article III of the Constitution. *See Adarand Constructors, Inc. v. Mineta*, 534 U.S. 103, 110 (2001). Fleck also complains that because the city's motion to dismiss challenged standing on the ground that Fleck was allegedly not licensed to transact business in Arizona, the district court impermissibly went "beyond the scope of the limited Motion to Dismiss in order to craft a basis upon which to contrive a basis [sic] for granting the Motion." Of course, since standing is an aspect of subject matter jurisdiction, the district court was free to reach the issue *sua sponte* and was free to find that Fleck lacked standing for reasons other than those put forward by the city. *See* Fed. R. Civ. P. 12(h)(3); *Steel Co. v. Citizens for Better Env't*, 523 U.S. 83, 95 (1998).

the merits)*; FW/PBS, Inc. v. City of Dallas*, 493 U.S. 215, 235 (1990); *Brereton v. Bountiful City Corp.*, 434 F.3d 1213, 1216-20 (10th Cir. 2006) (dismissal for want of standing must be "without prejudice").

VACATED AND REMANDED with instructions.