**FOR PUBLICATION**

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

TIM CARRICO,
                              *Plaintiff,*
              and

SMALL PROPERTY OWNERS OF SAN
FRANCISCO INSTITUTE; MARY
FIGONE,
              *Plaintiffs-Appellants,*

              v.

CITY AND COUNTY OF SAN
FRANCISCO,
              *Defendant-Appellee.*

No. 09-17151

D.C. No.
3:09-CV-00605-
WHA

OPINION

Appeal from the United States District Court
for the Northern District of California
William H. Alsup, District Judge, Presiding

Argued and Submitted
April 15, 2011—San Francisco, California

Filed September 6, 2011

Before: John T. Noonan and N. Randy Smith,
Circuit Judges, and Frederic Block, District Judge.*

Opinion by Judge Block

---

*The Honorable Frederic Block, Senior United States District Judge for
the Eastern District of New York, sitting by designation.

**COUNSEL**

Andrew M. Zacks and Paul F. Utrecht (argued), Zacks & Utrecht, P.C., San Francisco, California, for the plaintiffs-appellants.

Tara M. Steeley, Deputy City Attorney, San Francisco, California, for the defendant-appellee.

**OPINION**

BLOCK, District Judge:

The Small Property Owners of San Francisco Institute ("SPOSFI") and Mary Figone appeal the district court's judgment rejecting their facial First Amendment and vagueness challenges to portions of "Proposition M," a popularly enacted amendment to the rent-stabilization ordinance of the City and County of San Francisco ("the City"). Because we conclude that both SPOSFI and Figone lack standing, we cannot reach the merits of their challenges. Instead, we vacate the district court's judgment and remand with instructions to dismiss the complaint for lack of subject-matter jurisdiction.

I

San Francisco voters approved Proposition M in November 2008. As pertinent here, the proposition amended the City's rent-stabilization ordinance to prohibit residential landlords and their agents from attempting, "in bad faith," to "coerce the tenant to vacate with offers of payments to vacate which are accompanied with threats or intimidation." S.F. Admin. Code § 37.10B(a)(6).[1]

_____

[1]In a state-court challenge, the California Court of Appeal, First District, invalidated other parts of Proposition M, including a companion pro-

SPOSFI is a nonprofit association of approximately 1,500 residential landlords in San Francisco. In February 2009, it filed suit in the district court, seeking declaratory relief and a permanent injunction barring enforcement of parts of Proposition M. The association was joined by Tim Carrico, an individual landlord who is not a party to this appeal. Figone, another individual landlord, joined the suit in May of that year.

As set forth in their amended complaint, the plaintiffs raised three federal constitutional challenges. First, they alleged that § 37.10B(a)(6) violated the Free Speech and Petition Clauses of the First Amendment, made applicable to the City by the Fourteenth Amendment. Second, they alleged that § 37.10B(a)(6) failed to provide adequate notice of prohibited conduct in violation of the Due Process Clause of the Fourteenth Amendment. Third, they argued that deficiencies in the presentation of Proposition M on the ballot violated substantive due process. They also raised several state-law challenges. Rather than claiming that the proposition was invalid only as applied to them, the plaintiffs argued that it was invalid on its face.

The City moved to dismiss the substantive due process challenge pursuant to Federal Rule of Civil Procedure 12(b)(6). The district court agreed and dismissed that claim with prejudice. That ruling has not been appealed.

At the same time, the district court issued an order to show cause why the remaining federal claims—that is, the First Amendment and vagueness challenges—should not be dis-

_____

vision prohibiting "[c]ontinu[ing] to offer payments to vacate after tenant has notified the landlord in writing that they no longer wish to receive further offers of payments to vacate." *See Larson v. City & County of S.F.*, 192 Cal. App. 4th 1263, 1291-96 (2011) (quoting S.F. Admin. Code § 37.10B(a)(7)). Since the City concedes that it is bound by *Larson*, we omit any further discussion of that provision.

missed as "moot or insubstantial." After hearing argument and considering the parties' written responses to the show-cause order, the district court issued a twelve-page order dismissing the remaining federal claims.

The district court concluded that § 37.10B(a)(6) implicated only commercial speech, but not just commercial speech that was misleading or connected to unlawful activity. Accordingly, it applied the test announced in *Central Hudson Gas & Electric Corp. v. Public Service Commission*, 447 U.S. 557 (1980), and concluded that the City had carried its burden of showing that it "has a substantial interest in regulating the proscribed behavior and that the ordinance materially advances that goal in a narrowly tailored fashion."

Turning to the vagueness challenge, the district court held that *bad faith* "enjoys such common usage as to overcome any vagueness concerns," and that the other challenged terms *threats*, *intimidation* and *offers of payment*—"have meanings that a person of ordinary intelligence would understand." Finally, the court held that plaintiffs could not make out a facial challenge to Proposition M as an unconstitutional burden on their right to petition because § 37.10(a)(6) could be applied in many cases that did not implicate that right.

Having dismissed all of the federal claims, the district court declined to exercise supplemental jurisdiction, which is discretionary, over the state-law challenges. This appeal followed.

Although the City did not challenge appellants' standing either in the district court or before us, we raised the issue *nostra sponte* at oral argument. *See Stormans, Inc. v. Selecky*, 586 F.3d 1109, 1119 (9th Cir. 2009) ("Questions of standing may be raised and considered for the first time on appeal, including sua sponte."). At our invitation, both sides filed supplemental briefs addressing (1) whether the amended com-

plaint adequately alleged standing, and if not, (2) whether we should grant appellants leave to amend to cure any deficiency.

## II

**[1]** To establish "the irreducible constitutional minimum of standing," a plaintiff invoking federal jurisdiction must establish "injury in fact, causation, and a likelihood that a favorable decision will redress the plaintiff's alleged injury." *Lopez v. Candaele*, 630 F.3d 775, 785 (9th Cir. 2010) (citing *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560-61 (1992)). An injury in fact is "an invasion of a legally protected interest which is (a) concrete and particularized, and (b) actual or imminent, not conjectural or hypothetical." *Lujan*, 504 U.S. at 560 (internal citations and quotations omitted). An association like SPOSFI may maintain an action in the absence of an injury to itself, but only if it can show that "at least one of its members would have standing to sue in his own right." *Fleck & Assocs. v. City of Phoenix*, 471 F.3d 1100, 1105 (9th Cir. 2006).[2]

Plaintiffs in First Amendment cases may satisfy the injury-in-fact requirement without actually engaging in claimed protected speech. *See Arizona Right to Life Political Action Comm. v. Bayless*, 320 F.3d 1002, 1006 (9th Cir. 2003). Such "pre-enforcement plaintiffs" must, however, demonstrate "an intention to engage in a course of conduct arguably affected with a constitutional interest, but proscribed by a statute, and . . . a credible threat of prosecution thereunder." *Babbitt v. United Farm Workers Nat'l Union*, 442 U.S. 289, 298 (1979). By contrast, "[w]hen plaintiffs 'do not claim that they have

---

[2]"Associational standing" also requires a showing that "the interests the suit seeks to vindicate are germane to the organization's purpose," and that "neither the claim asserted nor the relief requested requires the participation of individual members in the lawsuit." *Fleck & Assocs.*, 471 F.3d at 1105-06. We assume, but do not hold, that SPOSFI could make that showing.

ever been threatened with prosecution, that a prosecution is likely, or even that a prosecution is remotely possible,' they do not allege a dispute susceptible to resolution by a federal court." *Id.* at 298-99 (quoting *Younger v. Harris*, 401 U.S. 37, 42 (1971)).

The same rules apply to plaintiffs bringing facial challenges and invoking the speech of others under the overbreadth doctrine. *See Dream Palace v. County of Maricopa,* 384 F.3d 990, 999 (9th Cir. 2004) ("[T]he overbreadth doctrine does not affect the rigid constitutional requirement that plaintiffs must demonstrate an injury in fact to invoke a federal court's jurisdiction." (citation and internal quotation marks omitted)); *Clark v. City of Lakewood*, 259 F.3d 996, 1010 (9th Cir. 2001) ("Under the overbreadth doctrine, . . . prudential considerations have weighed in favor of allowing litigants to bring First Amendment challenges on behalf of those whose expression might be impermissibly chilled, *so long as the plaintiff also suffers an injury in fact*." (emphasis added)). They also apply to plaintiffs asserting vagueness challenges. *Cf. Hunt v. City of Los Angeles*, 638 F.3d 703, 711 (9th Cir. 2011) (finding standing where allegedly vague ordinance was actually enforced against plaintiff).

In concluding that particular "pre-enforcement plaintiffs" have failed to establish standing, we have relied on "three related inquiries":

> First, we have considered whether pre-enforcement plaintiffs have failed to show a reasonable likelihood that the government will enforce the challenged law against them. Second, we have considered whether the plaintiffs have failed to establish, with some degree of concrete detail, that they intend to violate the challenged law. We have also considered a third factor, whether the challenged law is inapplicable to the plaintiffs, either by its terms or as interpreted by the government. Such inapplicability weighs against

both the plaintiffs' claims that they intend to violate the law, and also their claims that the government intends to enforce the law against them.

*Lopez*, 630 F.3d at 786.

A plaintiff must establish standing with the "manner and degree of evidence required at the successive stages of the litigation." *Lujan*, 504 U.S. at 561. Since this case was dismissed at the pleading stage, we base our analysis on the allegations of the amended complaint, which we accept as true. *See Barnum Timber Co. v. EPA*, 633 F.3d 894, 905 n.3 (9th Cir. 2011).

## III

**[2]** Appellants alleged, without further elaboration, that "Proposition M was intended to, and does, impact their operations as landlords." This conclusory allegation is insufficient to establish standing. *See Lopez*, 630 F.3d at 787 ("Mere '[a]llegations of a subjective 'chill' are not an adequate substitute for a claim of specific present objective harm or a threat of specific future harm.' " (quoting *Laird v. Tatum*, 408 U.S. 1, 13-14 (1972)).

**[3]** Appellants further alleged that they "are subject to the legal and constitutional infirmities of the municipal ordinance." Citing *Pennell v. City of San Jose*, 485 U.S. 1 (1988), they argue in their post-argument submissions that that allegation alone is sufficient to confer standing. We disagree.

At issue in *Pennell* was an ordinance allowing city officials to take into account "hardship to a tenant" in determining whether a landlord's proposed rent increase was reasonable. *See id.* at 5. As in the present case, an individual landlord and an association akin to SPOSFI sued to enjoin enforcement of the ordinance. *See id.* at 6.

**[4]** Contrary to appellants' contention, the Supreme Court did not find standing based solely on the allegation that the plaintiffs were "subject to the terms of" the ordinance; it also noted the association's statement at oral argument that it represented "most of the residential unit owners in the city and [had] many hardship tenants." *Id.* at 7. While recognizing that the record left "much to be desired in terms of specificity," the Court was at least able to infer a probability that the ordinance would be enforced against members of the association and the "concomitant probability" that, as a result of enforcement, some of those members would be required to charge a rent lower than they would have preferred. *Id.* at 8. Based on those inferences, it held that the association had shown a "sufficient threat" of an injury in fact.[3]

**[5]** Here, by contrast, there is no allegation on which to base an inference that any of SPOSFI's members intend to engage in conduct even arguably proscribed by Proposition M. As a matter of common sense, an allegation that a plaintiff is "subject to" the challenged ordinance cannot suffice. The plaintiff in *Lopez*, a college student, was undoubtedly "subject to" his college's antiharassment policy. We nevertheless held that he could not establish even a threat of being punished for violating the policy.

**[6]** As the Supreme Court observed in *Pennell*, "application of the constitutional standing requirement [is not] a mechanical exercise." 485 U.S. at 7 (quoting *Allen v. Wright*, 468 U.S. 737, 751 (1984)) (alteration in original). In other words, context matters. Being a landlord with "hardship tenants" was enough to demonstrate a plausible injury in fact flowing from the ordinance at issue in *Pennell*. But Proposition M does not apply based solely on the status of landlord or tenant. Rather, it requires a landlord to *do* something—to

---

[3]Having held that the association had standing, the Court did not address whether the individual landlord did as well. *See Pennell*, 485 U.S. at 8 n.4.

attempt, through "threats or intimidation," to "coerce the tenant to vacate with offers of payments to vacate." SPOSFI did not make any allegations regarding speech or conduct that its members would engage in that might violate Proposition M.

**[7]** This failing pervades the three inquiries identified in *Lopez*. Without any description of intended speech or conduct, we cannot analyze what SPOSFI's members would like to do. We, therefore, cannot analyze whether what they would like to do even arguably falls within the scope of Proposition M. And, therefore, we cannot analyze whether they face a credible threat of prosecution by the City. Indeed, without more, we cannot even analyze whether what SPOSFI's members want to do is protected by the First Amendment in the first place.

**[8]** In sum, SPOSFI has not demonstrated that its members have "an intention to engage in a course of conduct arguably affected with a constitutional interest," that what they wish to do is "proscribed by [Proposition M]," or that they face "a credible threat of prosecution thereunder." *Babbitt*, 442 U.S. at 298. It therefore lacks standing.

Unlike SPOSFI, Figone at least alleged a concrete example of Proposition M's effect on her. She alleged that she became embroiled in a dispute with a subtenant of a former tenant who continued to claim a valid tenancy after the main tenant's lease expired. The subtenant sued, claiming that Figone's "communications regarding his status, threats to invoke legal process to resolve the situation, her subsequent lawsuit itself, and even her refusal to accept his rent pending resolution violated Proposition M."

**[9]** Nevertheless, Figone's allegations are insufficient for two reasons. First, since she did not allege that she offered the subtenant payment to vacate, she has not demonstrated that her conduct is even "arguably . . . proscribed," *Babbitt*, 442 U.S. at 298, by Proposition M. Second, and more fundamen-

tally, this suit concerns *the City's* ability to enforce Proposition M. That a private individual has invoked Proposition M for his own ends does not remotely imply that the City endorses a similarly expansive interpretation.[4]

**[10]** In sum, we hold that appellants' allegations, as they now stand, are insufficient to confer standing. We therefore pass to the question of whether we should allow appellants leave to amend them.

## IV

A court should "freely give leave [to amend] when justice so requires." Fed. R. Civ. P. 15(a)(2). It is properly denied, however, if amendment would be futile. *See Gordon v. City of Oakland*, 627 F.3d 1092, 1094 (9th Cir. 2010).

**[11]** Appellants' principal argument is that the allegations of their amended complaint are sufficient to confer standing. They seek leave to amend only as an afterthought. Moreover, they do not, in their post-argument submissions, propose any specific allegations that might rectify their failure to identify any arguably prohibited speech or conduct in which they would otherwise engage. We take that as a demonstration of their inability (or, perhaps, unwillingness) to make the necessary amendment. Accordingly, we deny leave to amend as futile.

Instead, we

---

[4]Figone's allegations do not convert her facial challenge into an as-applied one. Had she wished to remedy the effect of Proposition M on her subtenant's suit, she would have named him as a party and sought a declaratory judgment and/or injunctive relief binding him. Instead, the only entity bound by a judgment favorable to Figone in this case would be the City. Thus, the relief Figone seeks would not remedy her claimed injury.

VACATE AND REMAND WITH INSTRUCTIONS TO DISMISS FOR LACK OF JURISDICTION.