Filed 5/2/23  San Francisco Apartment Assn. v. City and County of San Francisco CA1/3

## NOT TO BE PUBLISHED IN OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## FIRST APPELLATE DISTRICT

## DIVISION THREE

| | |
|---|---|
| SAN FRANCISCO APARTMENT ASSOCIATION et al., <br><br> Plaintiffs and Appellants, <br><br> v. <br><br> CITY AND COUNTY OF SAN FRANCISCO, <br><br> Defendant and Appellant. | A161866 <br><br> (City & County of San Francisco Super. Ct. No. CPF20517087) |

The City and County of San Francisco (the City) adopted Ordinance No. 36-20 (Ordinance 36-20) in 2020, amending the requirements for "buyout" agreements between landlords and tenants and classifying certain types of unlawful detainer settlements as buyout agreements.  Four associations (the associations, or plaintiffs), three of them representing residential rental-property owners and one representing realtors, brought this facial challenge to the ordinance, alleging it conflicted with state law and seeking a writ of mandate and declaratory relief.  The trial court granted the writ petition, and subsequently entered judgment in plaintiffs' favor.

The City and the associations have both appealed.  The City contends the associations did not meet their burden to show they have standing to bring this action.  The associations argue the trial court erred by entering

1

judgment granting narrower relief than indicated in its initial order granting the writ petition. We find no error, and accordingly affirm.

## FACTUAL AND PROCEDURAL BACKGROUND

### I. Tenant Buyout Ordinance and Amendments

In 2014, the City adopted section 37.9E of the Administrative Code (Ordinance 37.9E, or the buyout ordinance), entitled "Tenant Buyout Agreements." (Section 37.9E; Ord. No. 225-14, Oct. 21, 2014) In enacting the buyout ordinance, the City found that some landlords who wished to charge market-rate rent for rent-controlled apartments or to sell their property offered cash buyouts to tenants in exchange for the tenants vacating the units. These buyouts allowed landlords to circumvent restrictions that applied to no-fault evictions, such as additional time for a tenant to move out or funds to cover relocation costs. And, according to the City, landlords sometimes used high-pressure tactics and intimidation to persuade tenants to sign the agreements. (Ord. 37.9E, subd. (a).)

To remedy these problems, the City enacted Ordinance 37.9E. Originally, the ordinance required landlords to provide tenants with a disclosure of their rights before beginning buyout negotiations (*id.*, subd. (d)); required buyout agreements to be in writing and include statements about the tenants' rights (*id.*, subd. (f)); allowed tenants to rescind buyout agreements for up to 45 days (*id.*, subd. (g)); required landlords to report buyout negotiations and agreements to the City's Rent Board (*id.*, subds. (e), (h)); provided for the creation of a publicly available database of buyout agreements (*id.*, subd. (i)); and authorized tenants and certain non-profits to bring actions for violations of the ordinance (*id.*, subd. (k)). As originally enacted, Ordinance 37.9E defined a " 'Buyout Agreement' " as "an agreement wherein the landlord pays the tenant money or other consideration to vacate

2

the rental unit. *An agreement to settle a pending unlawful detainer action shall not be a 'Buyout Agreement.' "* (*Id*., subd. (c), italics added.)

The City amended the buyout ordinance on February 3, 2020, when it passed Ordinance 36-20, the measure at issue in this appeal. The City found that the buyout ordinance's exclusion of unlawful detainer settlements from the protections of Ordinance 37.9E had "developed into a significant loophole. Elevating form over substance, some landlords will start buyout negotiations, but then file unlawful detainer actions so that they can resolve the negotiations as 'settlements' rather than 'buyouts,' and thereby avoid complying with the Buyout Ordinance. This undermines the goals of the Buyout Ordinance." (Ordinance 36-20, § 1.) The City also identified concerns "that some landlords continue to employ the high-pressure tactic of giving tenants very little time to conduct buyout negotiations," and some disregard their obligation under the buyout ordinance "to give tenants a set of written disclosures before buyout negotiations start," rather than when the negotiations are about to conclude. (*Ibid*.) "In light of these various problems," the City revised the buyout ordinance "to modify certain pre-notification disclosure rules, so that the process is fairer and so that the City can better monitor compliance." (*Ibid*.)

Ordinance 36-20 amends the definition of " 'Buyout Agreement' " to include an agreement to settle a pending unlawful detainer action if the action was filed within 120 days after commencement of buyout negotiations. (Ord. 36-20, subd. (c).) The amendments also require the party filing a buyout agreement to inform the Rent Board whether the agreement concerns an unlawful detainer action, and require the Rent Board to redact confidential information regarding the unlawful detainer action. (*Id*., subd. (i).) Ordinance 36-20 additionally contains a number of changes not

3

directly related to unlawful detainer actions. It specifies additional information landlords must disclose to tenants before buyout negotiations begin (*id*., subd. (d)(11)); requires landlords to declare under penalty of perjury that they provided the required disclosures before negotiations began (*id*., subd. (e)); requires landlords to notify the Rent Board of the assessors' parcel number and the address of the relevant building and of the date the tenant received the required notice (*ibid*.); requires at least 30 days between commencement of negotiations and execution of a buyout agreement (*id*., subd. (f)(1)); allows tenants to void language in a buyout agreement waiving rights or releasing claims if the landlord does not file the agreement with the Rent Board within 59 days (*id*., subds. (f)(2), (h)); and makes other minor changes. It includes a severability clause. (Ord. 36-20, § 5.)

**II. Petition for Writ of Mandate**

The associations—San Francisco Apartment Association (SFAA), San Francisco Association of Realtors (SFAR), Coalition for Better Housing (CBH), and Small Property Owners of San Francisco Institute (SPOSFI)— brought this action on May 12, 2020. On August 5, they filed a verified amended petition for writ of mandate and complaint for declaratory relief (the petition) and moved for a hearing on the petition.

The petition alleges that, as amended by Ordinance 36-20, the buyout ordinance is facially invalid. Specifically, the petition alleges the ordinance violates the state litigation privilege by placing procedural and substantive burdens on offers to settle unlawful detainer actions, thus interfering with landlords' rights of access to the judicial process; the ordinance's procedures conflict with, and are thus preempted by, California's summary unlawful detainer statutes (Code Civ. Proc, § 1159 et seq.);[1] and the ordinance

---

[1] All undesignated references are to the Code of Civil Procedure.

4

undermines the courts' authority to promote and enforce settlement agreements by requiring landlords to wait 30 days before executing a buyout agreement that settles an unlawful detainer case, then delaying finality of the agreement for 45 days until the tenant's right of rescission expires, and preventing courts from enforcing the agreement if the landlord misses the 59-day deadline to file it with the Rent Board. Based on these alleged violations, the petition sought a declaration that Ordinance 36-20 (particularly as to sections (c), (f)(1), and (h)) is facially invalid, and a writ of mandate prohibiting enforcement of Ordinance 36-20. The petition did not challenge the originally enacted provisions of the buyout ordinance. The parties stipulated to extend the City's time to answer until after the court issued its ruling, and the trial court so ordered.[2]

A hearing took place on September 15, 2020, and on October 8, 2020, the trial court issued an "Order Granting Petition for Writ of Mandate." The court first ruled the associations had sufficiently alleged standing to challenge Ordinance 36-20. We discuss the allegations regarding standing in greater detail below.

On the merits, the trial court found Ordinance 36-20 invalid in three respects. First, the ordinance interferes with section 664.6, which authorizes courts to enter judgment pursuant to the terms of a settlement agreement, by imposing restrictions on settlement for all unlawful detainer actions brought within 120 days of the commencement of negotiations. Second, the ordinance is preempted by state law, which occupies the field of summary procedures to recover possession of real property in unlawful detainer actions (citing *Birkenfeld v. City of Berkeley* (1976) 17 Cal.3d 129, 151), because the

---

[2] We grant the City's June 13, 2022 request for judicial notice of the stipulation and order.

5

ordinance delays recovery of possession and allows agreements to be rescinded if the landlord fails to record them as required with the Rent Board. Third, the ordinance violates the litigation privilege (Civ. Code, § 47, subd. (b)) by imposing liability on all landlords who threaten an unlawful detainer action but do not also comply with the ordinance. (Ord. 37.9E, subd. (k)(1) & (2).) The court therefore found "Ordinance 36-20 is invalid and unenforceable" and concluded, "[a]ccordingly, [¶] (1) A writ of mandate shall issue, commanding Respondent City to set aside the actions approving and enacting Ordinance 36-20; and [¶] (2) Respondent City is enjoined from enforcing Ordinance 36-20, per the findings set forth above." Notice of entry of order was served on October 13, 2020.

Over the next several weeks, the parties engaged in negotiations regarding a possible settlement under which they would agree to a judgment and writ that invalidated only the offending portions of Ordinance 36-20, but they were unable agree on the scope of such a judgment.

The City filed an ex parte application for entry of writ and judgment on December 9, 2020, contending that the judgment should be broad enough to remedy only the legal violations the trial court identified, not to enjoin provisions that violate no law. The City proposed that the City be prohibited from enforcing only subsections (c) and (i) of Ordinance 36-20. These portions of the amended buyout ordinance expand the definition of " 'Buyout Agreement' " to include certain agreements to settle an unlawful detainer action (subsection (c)) and require a party filing a buyout agreement with the Rent Board to indicate whether the agreement concerns an unlawful detainer action, so the Rent Board can make required redactions in such cases (subsection (i)).

6

On the same date, the associations opposed the City's application and filed their own ex parte application for entry of judgment and entrance of a writ. They argued that the City's application was a procedurally improper request for reconsideration; that, pursuant to the October 8, 2020 order, they were entitled to judgment prohibiting enforcement of Ordinance 36-20 in its entirety; and that the City had forfeited its argument that the offending portions of the measure were severable by failing to raise the argument earlier. Plaintiffs included in their submissions a proposed judgment enjoining the City from "enforc[ing] or apply[ing] Ordinance 36-20" and directing issuance of a writ of mandate commanding the City not to do so.

The trial court entered judgment as proposed by the City on December 11, 2020, directing that "[a] writ of mandate shall issue commanding respondent City not to enforce or apply subsections (c) and (i)" and enjoining the City "from enforcing or applying subsections (c) and (i)" of Ordinance 36-20. The City appealed, and the associations cross-appealed.

## DISCUSSION

### I. Standing

The City's only assignment of error in its appeal is that the trial court improperly found the associations had standing to challenge Ordinance 36-20. A party's standing to bring an action is a threshold issue to be resolved before proceeding to the merits of a case. (*Apartment Assn. of Los Angeles County, Inc. v. City of Los Angeles* (2006) 136 Cal.App.4th 119, 128 (*Apartment Assn.*).) Standing is normally a question of law to which we apply a de novo standard or review, although we review any underlying factual findings for substantial evidence. (*San Luis Rey Racing, Inc. v. California Horse Racing Bd.* (2017) 15 Cal.App.5th 67, 73.)

7

### A. Procedural Background

In their verified amended petition, the associations allege that SFAA is a non-profit trade association of more than 2,800 members, who own more than 65,000 residential real properties in the City. Its mission is to educate, advocate for, and support the rental housing community and preserve the property rights of residential rental property providers, and it receives many calls from property owners about their legal rights and duties. According to the petition, "SFAA and its members are adversely and directly affected by the Buyout Ordinance as Amended. SFAA includes members who are currently terminating, and will in the future terminate, San Francisco tenancies under Rent Ordinance § 37.9(a)[3] and most of these tenancies are subject to the Ordinance. The ability of residential property owners to exercise their state law termination rights, including those under the unlawful detainer statutes and litigation privilege, free from the ordinance is germane to SFAA's organizational purpose and this challenge does not require the participation of individual members."

As to SFAR, the petition alleges it provides services to realtors doing business in San Francisco; that homes are often tenant-occupied and financing terms may require the borrower to occupy the dwelling; that the ordinance harms SFAR and its members by delaying the process of home purchasing; and that the ordinance exposes realtors to potential liability if a buyout agreement is rescinded after the sale is complete.

The petition alleges CBH is a non-profit trade organization representing owners of more than 20,000 residential rental units in San Francisco, that its purposes include advocating for, supporting, and

---

[3] San Francisco Rent Ordinance, Administrative Code section 37.9, subdivision (a), governs the grounds for eviction.

protecting the property and legal rights of CBH members and other rental property owners; that CBH members own buildings subject to the provisions of the ordinance; and that CBH and its members are directly and adversely affected by the ordinance because it affects their ability to manage their real property and have access to the courts.

SPOSFI is an organization of small property owners that advocates for the rights of residential rental property owners in San Francisco and seeks to protect their rights against unfair and burdensome regulations. The petition alleges SPOSFI has standing because its members' ability to manage and control their real property and exercise their statutory rights is germane to the organization's purpose, and individual members are subject to the ordinance and could have challenged it in their own right.

The trial court concluded plaintiffs sufficiently alleged standing. According to the trial court, the associations are "uniquely and perhaps exclusively affected" by the amended ordinance; the " 'public at large' " has no such interest as the ordinance applies only to landlords and tenants. The court concluded plaintiffs have a beneficial interest in the action, as their "individual members would have standing to sue in their own right over restrictions on the manner in which they can initiate, prosecute and ultimately settle unlawful detainer actions"; the interests plaintiffs seek to protect are germane to the interests of the associations and their members; and there was no requirement for the personal participation of the members.

*B. Analysis*

An association has standing to bring an action on behalf of its members when three criteria are met: (1) its members would have standing to bring suit in their own right; (2) the association seeks to protect interests germane to the purpose of the organization; and (3) neither the claim nor the

9

requested relief requires participation of the association's individual members. (*Apartment Assn.*, *supra*, 136 Cal.App.4th at p. 129; *San Francisco Apartment Assn. v. City and County of San Francisco* (2016) 3 Cal.App.5th 463, 472 (*SFAA*).)

The City challenges the existence of only the first of these three requirements. To meet this requirement, there is no need to show that each individual member of an association has suffered, or is at imminent risk of suffering actual injury; rather, "it is enough if the plaintiff organization proves by a preponderance of the evidence that its members have ' "some special interest to be served or some particular right to be preserved or protected over and above the interest held in common with the public at large." ' " (*SFAA*, *supra*, 3 Cal.App.5th at p. 474.) That is, association members must " 'be "beneficially interested," ' " and that "interest must be direct and substantial." (*League of California Cities v. Superior Court* (2015) 241 Cal.App.4th 976, 985.) "Writ relief is not available if the petitioner gains no direct benefit from the writ's issuance, or suffers no direct detriment from its denial." (*Ibid.*)

We conclude this legal standard is met here, at least for the associations representing groups of landlords. Without distinguishing among plaintiffs, the trial court found their "members would have standing to sue in their own right over restrictions on the manner in which they can initiate, prosecute and ultimately settle unlawful detainer actions." We think substantial evidence supports this finding for SFAA, CBH, and SPOSFI, whose members own residential rental property in the City.[4] SFAA alleged

---

[4] We do not see how this finding could apply to SFAR and its realtor members, who presumably do not initiate, prosecute, or settle unlawful detainer actions. But since three other plaintiffs who do have standing bring

10

in the verified petition that it represented owners of more than 65,000 rental properties, and CBH represents owners of more than 20,000 units. Some of these associations' members are currently terminating, or will soon terminate, tenancies, most of which are subject to Ordinance 36-20. The City has presented nothing to undermine these allegations, and we will assume they are true. (See *Apartment Assn.*, *supra*, 136 Cal.App.4th at pp. 127–129 [finding standing based on allegations of complaint].) Rather, the City suggests that to establish standing, plaintiffs must show they have members with concrete plans to initiate buyout negotiations, then file an unlawful detainer action within a certain amount of time, then enter into a buyout agreement without complying with the buyout ordinance. We are unpersuaded. The City itself found that before the passage of Ordinance 36-20, some landlords began buyout negotiations then filed and settled an unlawful detainer action to avoid having to comply with the buyout ordinance. Having passed ordinance 36-20 specifically to put a stop to this behavior, the City can hardly protest when associations representing landlords aver that their members chafe under the constraints of the ordinance. By its terms, Ordinance 36-20 limits and imposes conditions on remedies available to landlords seeking to terminate tenancies and settle unlawful detainer actions. We conclude the associations have adequately alleged that their members have an interest in this matter beyond that of the public at large, and that they would directly benefit from issuance of the writ. (See *SFAA, supra*, 3 Cal.App.5th at p. 474.)

We are confirmed in that view by a pair of cases brought by the same or similar plaintiffs to challenge other local ordinances. In *SFAA*, a case

---

identical claims to those brought by SFAR, the question of SFAR's standing need not detain us.

11

involving three of the same plaintiffs as those now before us, a different panel of this division upheld the trial court's finding that the plaintiffs had standing to challenge, on grounds of preemption by the Ellis Act (Gov. Code, § 7060 et seq.), a different City ordinance. (*SFAA, supra,* 3 Cal.App.5th at pp. 472–474.) The challenged enactment imposed a waiting period on a landlord who withdrew a rental unit from the market, before the landlord could merge the withdrawn unit into one or more other units. (*Id.* at pp. 468–469.) The trial court found plaintiffs had proved their members' beneficial interest, reasoning that the ordinance infringed on the right of SFAA and CBH members to exit the rental market under the Ellis Act and affected the ability of real estate agents represented by SFAR to market, sell, and manage rental properties in the City. (*Id.* at p. 473.) These findings, the appellate court concluded, were adequately supported by sworn declarations that SFAA had received numerous calls from members protected under the Ellis Act asking how the new law would apply to residential properties in San Francisco; that CBH members were protected by the Ellis Act and would be subject to the merger ban; and that SFAR members would be harmed when the ordinance discouraged prospective buyers who wished to merge units into a single-family residence from purchasing a building where Ellis Act evictions had occurred. (*Id.* at pp. 473–474.) The plaintiffs thus showed that they had an interest in the action beyond that of the public at large. (*Id.* at p. 474.)

*Apartment Assn.* is also instructive. There, an association representing owners and managers of residential rental property in the City of Los Angeles challenged a rent stabilization ordinance that, among other things, made landlords liable for civil damages if they received excess rent. (*Apartment Assn., supra,* 136 Cal.App.4th at pp. 125–126, 128.) Based solely

on the allegations of the complaint, the Court of Appeal concluded the association plaintiffs satisfied all three criteria for standing: their individual members could have challenged the validity of the ordinance in their own right, the right to fair rent was germane to their organizational purposes, and their facial challenge did not require the participation of individual members. (*Id*. at pp. 127, 129.)

Relying in large part on federal cases, the City argues the requisite injury in fact is not established here. The " 'injury in fact' " necessary for standing in federal court is "an invasion of a legally protected interest which is (a) concrete and particularized, [citations]; and (b) 'actual or imminent, not "conjectural" or "hypothetical." ' " (*Lujan v. Defenders of Wildlife* (1992) 504 U.S. 555, 560, fn. omitted.) In the past, our high court has described California's beneficial interest test as "equivalent to the federal 'injury in fact' test" (*Associated Builders & Contractors, Inc. v. San Francisco Airports Com.* (1999) 21 Cal.4th 352, 361–362); more recently it has observed "[t]here are sound reasons to be cautious in borrowing federal standing concepts, born of perceived constitutional necessity, and extending them to state court actions where no similar concerns apply." (*Kwikset Corp. v. Superior Court* (2011) 51 Cal.4th 310, 322, fn. 5, citing *Jasmine Networks, Inc. v. Superior Court* (2009) 180 Cal.App.4th 980, 990–993; see also *Save the Plastic Bag Coalition v. City of Manhattan Beach* (2011) 52 Cal.4th 155, 166, fn.3 & 170 [analyzing beneficial interest without reference to injury in fact].) But even if we assume, without deciding, that federal cases applying the injury in fact standard are a potential source of useful guidance, we remain unpersuaded that the trial court erred in finding standing here.

In *Carrico v. City and County of San Francisco* (9th Cir. 2011) 656 F.3d 1002 (*Carrico*), upon which the City relies, SFOSFI and two individual

landlords challenged a rent stabilization ordinance prohibiting residential landlords and their agents from attempting, in bad faith, to coerce tenants to vacate with offers of payment accompanied by threats or intimidation.  (*Id.* at p. 1004.)  The Ninth Circuit explained that, when considering whether " 'pre-enforcement plaintiffs' " have established standing, it looked to whether the plaintiffs showed a reasonable likelihood the government would enforce the challenged law against them; whether they established that they intended to violate the challenged law, and whether the law is applicable to the plaintiffs, either by its terms or as interpreted by the government.  (*Id.* at p. 1006.)  These requirements, the court concluded, were not met by the plaintiffs' bald allegations that the ordinance " 'was intended to, and does, impact their operations as landlords' " and that they were " 'subject to the legal and constitutional infirmities" of the ordinance.  (*Ibid.*)  "[C]ontext matters," the court explained (*id.* at p. 1007), and none was provided here.  Since "SPOSFI did not make any allegations regarding speech or conduct that its members would engage in that might violate" the ordinance, the court could not analyze "whether what they would like to do even arguably falls within the scope of" the ordinance or "is protected by the First Amendment."  (*Ibid.*)

The court in *Carrico* distinguished *Pennell v. City of San Jose* (1988) 485 U.S. 1 (*Pennell*), which found standing where an apartment owners' association and an individual landlord challenged a rent control ordinance that allowed a hearing officer to consider the hardship to a tenant in determining whether to approve a rent increase.  (*Id.* at pp. 4, 6–8; *Carrico*, *supra*, 656 F.3d at pp. 1006–1007.)  Although there was no allegation that the plaintiffs had hardship tenants who might trigger the ordinance's hearing process or that they had been or would be aggrieved by a determination that a proposed rent increase was unreasonable, plaintiffs alleged their properties

14

were subject to the terms of the ordinance, and they stated at oral argument that the association represented most of the residential unit owners in the city and its members had many hardship tenants. (*Pennell*, at p. 7.) As a result, it was not " 'unadorned speculation' " to conclude the ordinance would be enforced against the organization's members. (*Id.* at p. 8.)

The City also relies on *Thomas v. Anchorage Equal Rights Comm'n* (9th Cir. 2000) 220 F.3d 1134, 1137 (*Thomas*), in which the Ninth Circuit found injury too speculative to support standing where several landlords challenged, on First Amendment grounds, an Alaska law prohibiting housing discrimination on the basis of marital status. The landlords claimed they had refused to rent to unmarried couples in the past and intended to do so in the future but could provide no details. (*Id.* at p. 1139.) And the record disclosed no credible threat that the law would be enforced against the landlords, especially since it had never before been criminally enforced and only twice in the preceding 25 years been enforced civilly. (*Id.* at p. 1140.)

We think this case is more like *Pennell* than *Carrico* or *Thomas*. Ordinance 36-20 was recently passed for the express purpose of preventing residential landlords from engaging in specifically-described behavior that, according the City, had turned into a "significant loophole" among landlords seeking to end tenancies. Plaintiffs' members represent a large swath of the landlords in the jurisdiction, including landlords who are currently engaged in ending tenancies, so, as in *Pennell*, it was hardly speculative to conclude the ordinance would directly affect their operations. (See *Pennell*, *supra*, 485 U.S. at p. 8.) Here there is no issue, as there was in *Thomas*, of a statute long on the books but rarely enforced, such that it "not reasonable" to conclude in *Thomas* that the statute would be enforced against the single landlord who sought to pursue a constitutional challenge. (*Thomas*, *supra*,

15

220 F.3 at p. 1141.)  And, unlike in *Carrico*, there is no need here for plaintiffs to have been more concrete about what conduct their members sought to engage in but considered the ordinance to prohibit.  (Cf. *Carrico*, *supra*, 656 F.3d at p. 1007.)  Ordinance 36-20 is much more specific in its directives.

Finally, we note the absence of any discussion of standing in a federal case the plaintiffs cited in their petition:  *San Francisco Apartment Assn. et al. v. City & County of San Francisco* (9th Cir. 2018) 881 F.3d 1169.  There, the Ninth Circuit rejected a constitutional challenge to the original buyout ordinance, Ordinance 37.9E, in a case brought by three of the same plaintiffs that brought this case—SFAA, SPOSFI, and SFAR.  Since standing is a jurisdictional issue that the court can raise sua sponte and for the first time on appeal (*Carrico, supra*, 656 F.3d at p. 1005), this silence suggests the Ninth Circuit saw no standing problem the last time these plaintiffs challenged the buyout ordinance.  Taken together the federal cases only confirm, if they are relevant at all, the conclusion we reach under California law that the trial court correctly determined the associations of landlords had standing to bring this challenge.

## II. Effect of October 8, 2020 Order

In its appeal, SFAA contends the trial court's initial order of October 8, 2020 (the October 8 order) granting the petition for writ of mandate was a final judgment and the court exceeded its jurisdiction and its discretionary powers by deviating from its terms when it entered judgment on December 11, 2020.  The City makes no challenge to the judgment of December 11, 2020 (the December 11 judgment), which invalidated only the portions of Ordinance 36-20 that expressly govern unlawful detainer actions.  Instead,

16

the City takes the position that, if we conclude the associations have standing, we should affirm that judgment.

" 'A judgment is the final determination of the rights of the parties in an action or proceeding.' " (*Public Defenders' Organization v. County of Riverside* (2003) 106 Cal.App.4th 1403, 1409.) Accordingly, an order granting or denying a petition for an extraordinary writ may constitute a final judgment for purposes of an appeal, even without a separate formal judgment. (*Ibid.*; *Natomas Unified School Dist. v. Sacramento County Bd. of Education* (2022) 86 Cal.App.5th 1013, 1027.) The test, which " 'must be adapted to the particular circumstances of the individual case,' " is whether any issue is left for the court's future consideration (aside from compliance or noncompliance with the first decree) or whether " 'anything further in the nature of judicial action on the part of the court is essential to a final determination of the rights of the parties.' " (*Griset v. Fair Political Practices Com.* (2001) 25 Cal.4th 688, 698; *Save Mount Diablo v. Contra Costa County* (2015) 240 Cal.App.4th 1368, 1376, fn. 5; *Public Defenders' Organization*, at p. 1410.) In making this determination, we consider " 'not the form of the decree but the substance and effect of the adjudication.' " (*Griset*, at p. 698.)

Plaintiffs argue that under these rules, the October 8 order was a final judgment because it decided all issues between the parties. That is important, plaintiffs contend, because in general, " 'once a judgment has been entered, the trial court loses its unrestricted power to change that judgment. The court does retain power to correct clerical errors in a judgment which has been entered. However, it may not amend such a judgment to substantially modify it or materially alter the rights of the parties under its authority to correct clerical error. . . . Once judgment has been entered, the trial court does retain jurisdiction for a limited period of time to entertain and grant a

17

motion for a new trial [citation] or . . . a motion to vacate a judgment and enter a different judgment for either of two reasons: an incorrect or erroneous legal basis for the decision, not consistent with or supported by the facts, or a judgment not consistent with or not supported by the special verdict." (*Rochin v. Pat Johnson Manufacturing Co.* (1998) 67 Cal.App.4th 1228, 1237; see *Manson, Iver & York v. Black* (2009) 176 Cal.App.4th 36, 43 ["A trial court lacks jurisdiction to amend a judgment ex parte in a manner not prescribed by statute"].)  And, plaintiffs argue, the October 8 order invalidated Ordinance 36-20 in its entirety—even portions that have nothing to do with unlawful detainer actions—and the City did not pursue a motion for a new trial or any other procedurally proper avenue to modification of the order.  As a result, according to plaintiffs, the trial court had no authority to deviate from the terms of the October 8 order in entering the December 11 judgment.

We are unpersuaded.  The October 8 order is not as clear-cut as plaintiffs suggest.  After finding Ordinance 36-20 invalid and unenforceable, the trial court issued two orders:  first, that a writ of mandate should issue requiring the "City to set aside the actions approving and enacting Ordinance 36-20" and second, that the "City is enjoined from enforcing Ordinance 36-20, per the findings set forth above."  The first of these orders was constitutional error—a violation of separation of powers—because it directed the City to undertake a specific legislative act. (See *Boatworks, LLC v. City of Alameda* (2019) 35 Cal.App.5th 290, 306 [separation of powers prevents courts from commanding legislative act]; *City of Palo Alto v. Public Employment Relations Bd.* (2016) 5 Cal.App.5th 1271, 1316 ["ordering rescission of a legislative act is in itself a legislative act," and "separation of powers . . . prohibits this remedy"].)  This portion is without effect.  And the second

18

portion contains an important qualification, that the injunction against enforcing the ordinance is "per the findings set forth above." Those findings pertain exclusively to the measure's effects on unlawful detainer actions. The trial court found that application of the buyout ordinance to unlawful detainer actions commenced within 120 days of a buyout offer interferes with section 664.4 and the resolution of pending cases; it is inconsistent with California's summary unlawful detainer procedures; and it violates the litigation privilege because a landlord's actions in threatening to bring an unlawful detainer action and in serving an eviction notice are protected by the privilege yet trigger the constraints of Ordinance 36-20. The court neither discussed nor found any violation unrelated to unlawful detainer actions.

That is not surprising, because the gravamen of the petition is that Ordinance 36-20 is facially invalid because it "enters a realm of state law that occupies the field of civil litigation in unlawful detainers, improperly imposing new requirements—not found in state law—at every stage of unlawful detainer litigation." Thus, according to the petition, the ordinance violates the litigation privilege at the outset of litigation by imposing burdens on unlawful detainer lawsuits contemplated in good faith; it conflicts with California's summary unlawful detainer process during litigation; and it undermines the court's ability to promote and enforce settlement agreements by preventing unlawful detainer actions from being fully and finally settled. As to the cause of action for declaratory relief, plaintiffs allege Ordinance 36-20 "violates all stages of unlawful detainer procedure," and as to the second cause of action for a writ of mandate, they allege the "patterned approach to the beginning, middle and end of unlawful detainer litigation" conflicts with state law. In their briefs and oral argument in the trial court, plaintiffs

19

similarly limited their arguments to the ordinance's unlawful "restrictions on all facets of the unlawful detainer process," arguing that these restrictions are preempted because they conflict with state law. (Cal. Const., art. XI, § 7.)

Plaintiffs seek to persuade us now that their allegations and written arguments below (and by extension the October 8 order) were not limited to unlawful detainer actions but apply to other actions that a landlord and tenant might also settle with a buyout agreement. However, they point only to general statements about the effects of Ordinance 36-20 and ignore the fact that those statements were made in the context of assertions that the new requirements impermissibly burden *unlawful detainer* actions. We have searched the record in vain for any discussion of how any other litigation would be affected. And, we bear in mind, this is a facial challenge to Ordinance 36-20. To mount a successful facial challenge, " ' "the challenger must establish that *no set of circumstances exists under which the* [*law*] *would be valid*." ' [Citation.] The moving party must show that the challenged statutes or regulations ' " 'inevitably pose a present total and fatal conflict' " ' with applicable prohibitions." (*T.H. v. San Diego Unified School Dist.* (2004) 122 Cal.App.4th 1267, 1281; accord, *Association of California Ins. Cos. v. Poizner* (2009) 180 Cal.App.4th 1029, 1054.) In finding Ordinance 36-20 facially invalid, the trial court carefully explained that its restrictions applied to *all* unlawful detainer actions brought within 120 days of beginning buyout negotiations. Plaintiffs made no effort to establish Ordinance 36-20 similarly poses inevitable restrictions on any other type of litigation, and the court found no other facial violation.

It is well established that "equitable relief against other branches of government must be restrained by 'principles of comity and separation of powers,' and that '[a] court should always strive for the least disruptive

20

remedy adequate to its legitimate task.' " (*O'Connell v. Superior Court* (2006) 141 Cal.App.4th 1452, 1476 (*O'Connell*), quoting *Butt v. State of California* (1992) 4 Cal.4th 668, 695–696 (*Butt*).)[5]  Also relevant here, we apply the same rules in determining the meaning of a trial court order or judgment as in ascertaining the meaning of any other writing.  (*Mendly v. County of Los Angeles* (1994) 23 Cal.App.4th 1193, 1205; *Verner v. Verner* (1978) 77 Cal.App.3d 718, 724.)  We may look to findings of fact and conclusions of law to clarify any ambiguity.  (*Verner*, at p. 724.)  In interpreting a written instrument, we must avoid an interpretation that renders part of it surplusage, and if it is susceptible to two interpretations, we should apply an interpretation that makes the instrument lawful and avoid one that would make it unjust or inequitable.  (*Richeson v. Helal* (2007) 158 Cal.App.4th 268, 278; *National City Police Officers' Assn. v. City of National City* (2001) 87 Cal.App.4th 1274, 1279.)

Applying these principles, we construe the language of the October 8 order, "per the findings set forth above" to mean the trial court intended to enjoin Ordinance 36-20 only to the extent it applied to unlawful detainer actions.  Plaintiffs did not plead or show any other facially invalid aspects of the ordinance, and the trial court found none.  Our conclusion that the October 8 order was intended to prohibit enforcement only of the provisions related to unlawful detainer actions is bolstered by the fact that, when

---

[5] Noting that *O'Connell* considered an as-applied challenge and *Butt* a preliminary injunction, plaintiffs suggest this rule does not apply to facial challenges or to final relief.  They offer no principled basis to conclude it is proper to fashion unnecessarily broad relief in a facial challenge or in issuing a writ of mandate enjoining enforcement of an ordinance, and we can think of none.

presented with proposed judgments prepared by the parties, the trial court signed the one that was so limited.

Consistent with this interpretation, the December 11 judgment prohibits enforcement of the only two portions of Ordinance 36-20 specifically applicable to unlawful detainer actions—subsection (c), which expands the definition of buyout agreements to include an agreement to settle a pending unlawful detainer action filed within 120 days after buyout negotiations commenced, and subsection (i), which requires a party who filed a buyout agreement to inform the rent board whether it concerned an unlawful detainer action and, if so, requires the Rent Board to redact confidential information. With enforcement of these provisions enjoined, the buyout ordinance no longer applies to any unlawful detainer action, and the problems plaintiffs identified and the trial court found are remedied.

For the first time on appeal, plaintiffs seek to develop an argument that some of the remaining provisions of Ordinance 36-20 place impermissible burdens on litigation other than unlawful detainer cases. For instance, they argue, the definition of "Buyout Agreement" is vague enough that it might apply to any settlement of litigation, including other proceedings between landlords and tenants such as an action for breach of contract or ejectment, in violation of section 664.6. This contention fails. Plaintiffs did not raise the point in the trial court, either in their petition or in their arguments in support of issuing a writ. A party may ordinarily not argue on appeal questions not presented to the trial court. (See *County of Los Angeles v. Southern California Edison Co.* (2003) 112 Cal.App.4th 1108, 1118–1119 (*County of Los Angeles*).) Thus, to the extent plaintiffs attempt now to raise a facial challenge to Ordinance 36-20's effect on litigation other than unlawful detainer actions, we do not consider the challenge.

22

## III. Severability

Plaintiffs argue, however, that sections (c) and (i) are not severable from the rest of Ordinance 36-20, and the measure is unenforceable in its entirety. As we have explained, the ordinance includes a severability clause, which provides that if any portion is held to be invalid or unconstitutional, "such decision shall not affect the validity of the remaining portions or applications of the ordinance. The Board of Supervisors hereby declares that it would have passed this ordinance and each and every section, subsection, sentence, clause, phrase, and word not declared invalid or unconstitutional without regard to whether any other portion of this ordinance or application thereof would be subsequently declared invalid or unconstitutional."

" 'Although not conclusive, a severability clause normally calls for sustaining the valid part of the enactment, especially when the invalid part is mechanically severable. . . . The final determination depends on whether the remainder . . . is complete in itself and would have been adopted by the legislative body had the latter foreseen the partial invalidity of the statute . . . or constitutes a completely operative expression of the legislative intent . . . [and is not] so connected with the rest of the statute as to be inseparable.' " (*Calfarm Ins. Co. v. Deukmejian* (1989) 48 Cal.3d 805, 821; accord, *California Redevelopment Assn. v. Motosantos* (2011) 53 Cal.4th 231, 270–271 (*California Redevelopment*).) Thus, "[t]he remaining portions must constitute an independent operative expression of legislative intent, unaided by the invalidated provisions. They cannot be rendered vague by the absence of the invalidated provisions or be inextricably connected to them by policy considerations. They must be capable of separate enforcement." (*Barlow v. Davis* (1999) 72 Cal.App.4th 1258, 1265.)

These standards are easily met here. Section (c) of Ordinance 36-20, which adds certain unlawful detainer settlements to the definition of "'Buyout Agreement'" and section (i), which adds discrete requirements if a buyout agreement concerns an unlawful detainer action, may be removed without affecting the wording or coherence of the remaining portions of the ordinance. (See *California Redevelopment, supra*, 53 Cal.4th at p. 271.) And, even aside from the severability clause, the ordinance was intended to—and did—address at least two perceived problems unrelated to unlawful detainer settlements.

The "Findings and Purpose" portion of Ordinance 36-20 identifies multiple problems the ordinance was intended to address. After the concern that landlords filed unlawful detainer actions to avoid the buyout ordinance, "[a]nother concern" was that landlords used "the high pressure tactic of giving tenants very little time to conduct buyout negotiations." "Further," some landlords did not give their tenants the required disclosures of their rights until negotiations were almost complete. The ordinance continued, "In light of these various problems, this ordinance revised the Buyout Ordinance to modify certain pre-notification disclosure rules, so that the process is fairer and so that the City can better monitor compliance." These independent concerns were addressed by portions of Ordinance 36-20 other than sections (c) and (i), such as the requirement that the landlord file a declaration under penalty of perjury with the date and method of service used to give the tenant the required disclosures (Ord. 36-20, § (e)(4)), the requirement that at least 30 days elapse between commencement of buyout negotiations and execution of a buyout agreement (Ord. 36-20, § (f)(1)), and the provision allowing a tenant to void language waiving rights or releasing claims if the landlord does not file the agreement with the Rent Board within 59 days (Ord. 36-20,

24

§§ (f)(2), (h)).  These independent concerns support a conclusion that Ordinance 36-20 would have been adopted even without the provisions specifically applicable to unlawful detainer settlements.

We find no merit in plaintiffs' argument that the City forfeited a claim that the offending portions of Ordinance 36-20 should be severed from the remainder of the enactment when it neither filed an answer to the petition nor argued severability in its brief below.  The City did, in fact, contend in its ex parte application for entry of judgment that the ordinance was severable.  But, even assuming severability should have been raised as an affirmative defense in an answer—a proposition for which plaintiffs provide no authority—we have already explained that the trial court has its own duty to fashion relief no broader than necessary to remedy the ordinance's shortcomings.  (See *O'Connell, supra*, 141 Cal.App.4th at p. 1476, *Butt, supra*, 4 Cal.4th at pp. 695–696.)

Finally, we see no due process violation in the manner in which the trial court proceeded.  Both parties filed ex parte applications seeking to have the court enter a judgment that they argued would cure the legal violations found by the court.  Plaintiffs had notice of the City's ex parte application and an opportunity to present written arguments, both in support of their own proposed judgment and in opposition to the City's.  Having raised no objection in the trial court to proceeding on an ex parte basis, plaintiffs may not press that point on appeal.  (See *County of Los Angeles, supra*, 112 Cal.App.4th at pp. 1118–1119.)

In sum, plaintiffs fail to establish in their cross-appeal either substantive or procedural error in the trial court's decision to follow the October 8 order with the December 11 judgment.

25

## DISPOSITION

The judgment is affirmed.  Each party is to bear its own costs on appeal.



TUCHER, P.J.


WE CONCUR:

FUJISAKI, J.
RODRÍGUEZ, J.

*San Francisco Apartment Association et al. v. City & County of San Francisco* (A161866)

26