NOT FOR PUBLICATION

# UNITED STATES BANKRUPTCY APPELLATE PANEL
## OF THE NINTH CIRCUIT

|  |  |
|---|---|
| In re:<br>EAST COAST FOODS, INC.,<br>        Debtor. | BAP Nos. CC-23-1168-SCL<br>CC-23-1169-SCL |
|  | Bk. No. 2:16-bk-13852-BB |
| EAST COAST FOODS, INC.,<br>        Appellant,<br>v.<br>DEVELOPMENT SPECIALISTS, INC.;<br>BRADLEY D. SHARP, Chapter 11<br>Trustee,<br>        Appellees. | Adv. No. 2:23-ap-01192-BB<br><br>**MEMORANDUM**[*] |

Appeal from the United States Bankruptcy Court
for the Central District of California
Sheri Bluebond, Bankruptcy Judge, Presiding

Before: SPRAKER, CORBIT, and LAFFERTY, Bankruptcy Judges.

## INTRODUCTION

East Coast Foods, Inc. ("ECF") is the reorganized debtor in the above-captioned chapter 11 bankruptcy case.[1] ECF has repeatedly sought to sue

---

[*] This disposition is not appropriate for publication. Although it may be cited for whatever persuasive value it may have, *see* Fed. R. App. P. 32.1, it has no precedential value, *see* 9th Cir. BAP Rule 8024-1.

[1] Unless specified otherwise, all chapter and section references are to the Bankruptcy Code, 11 U.S.C. §§ 101–1532, all "Rule" references are to the Federal Rules

the former chapter 11 trustee, Bradley D. Sharp, and Development Specialists, Inc. ("DSI"), the company through which Sharp does business, for actions he took as chapter 11 trustee. None of its attempts have been successful. The bankruptcy court previously ordered ECF to dismiss two of its prior lawsuits based on the "*Barton* doctrine."[2] We affirmed the bankruptcy's court denial of ECF's *Barton* motion in a prior decision. *E. Coast Foods, Inc. v. Dev. Specialists, Inc. (In re E. Coast Foods, Inc.) ("East Coast I"),* 652 B.R. 910 (9th Cir. BAP 2023).

The bankruptcy court dismissed the latest action, an adversary proceeding, with prejudice when ECF failed to appear at the initial status conference. ECF then moved for reconsideration under Rule 9023 and sought an extension of the time to serve the summons and complaint under Civil Rule 4(m). The bankruptcy court denied both motions. The court explained that dismissal was appropriate for a variety of reasons. ECF now appeals from the dismissal order, the reconsideration denial order, and the extension denial order.

We affirm the dismissal of the complaint based on ECF's lack of standing as well as the denial of leave to amend the complaint. There is no set of facts consistent with the existing complaint that ECF plausibly could have alleged to cure ECF's lack of standing. However, once the court

---

of Bankruptcy Procedure, and all "Civil Rule" references are to the Federal Rules of Civil Procedure.

[2] *See Barton v. Barbour*, 104 U.S. 126 (1881).

correctly determined that ECF lacked standing, it lacked subject matter jurisdiction to reach the substantive issues it identified as additional grounds for dismissal. Nor did the court render sufficient findings to support a dismissal based on lack of prosecution or violation of local rules. Accordingly, the bankruptcy court's dismissal order is hereby ordered MODIFIED to dismiss solely for lack of standing without leave to amend. As modified, we AFFIRM. Dismissal as modified is without prejudice to the right of the claims' true owner to pursue or otherwise dispose of such claims, if any remain viable, if so desired.

As for the denial of reconsideration, review of this ruling largely has been rendered unnecessary by our resolution of the appeal from the dismissal order. But to the extent ECF sought reconsideration of the bankruptcy court's standing decision, ECF failed to present sufficient grounds for reconsideration. Therefore, we AFFIRM the denial of reconsideration. Similarly, because the court properly dismissed the adversary proceeding for lack of jurisdiction, there was no justification to extend the time to serve the summons and complaint in the dismissed action. Thus, we AFFIRM the extension denial.

Accordingly, we AFFIRM IN PART, MODIFY IN PART, AND AFFIRM AS MODIFIED.

//

//

//

## A.    Sharp's retention of TNI to manage ECF's operations and ECF's plan of reorganization.

We need not recount ECF's history leading up to its bankruptcy filing or the circumstances that precipitated Sharp's appointment as chapter 11 trustee. Those facts are set forth in *East Coast I,* as are the details concerning Sharp's employment of The Next Idea [International] LLC ("TNI") and its principal Robert Ancill to manage operations at ECF's four restaurant properties. *East Coast I* also discussed the reorganization plan the bankruptcy court confirmed.

Two points from our prior decision deserve emphasis because they are directly relevant to ECF's lack of standing. First, though Sharp, as chapter 11 trustee, was in charge of ECF's bankruptcy estate at the time of plan confirmation, ECF's principal Herbert Hudson and the Official Committee of Unsecured Creditors ("OCC") (jointly, "Plan Proponents") spearheaded the plan confirmation efforts. The Plan Proponents filed their first draft reorganization plan in January 2018, and the court confirmed an amended version of their plan in July 2018 ("Plan").

Second, while the Plan provided that ECF's assets generally revested in the reorganized debtor as of its effective date, some of ECF's assets were

---

[3] We exercise our discretion, when appropriate, to take judicial notice of documents electronically filed in the underlying bankruptcy case and adversary proceeding. *See Atwood v. Chase Manhattan Mortg. Co. (In re Atwood)*, 293 B.R. 227, 233 n.9 (9th Cir. BAP 2003).

carved out from revesting and instead vested in a "Plan Trust" to be controlled and administered by the "Plan Trustee" and to be distributed in accordance with the Plan. Hudson was classified as ECF's sole equity interest holder, and the Plan did not designate any specific amount for distribution to him. Instead, the Plan provided that he would retain his equity interest in the reorganized debtor and was prohibited from receiving any Plan distributions on account of his equity interest unless and until all allowed claims were paid in full. The Plan's distribution scheme also did not provide for any distributions to ECF as the reorganized debtor. Nor did the Plan identify either Hudson or ECF as "Beneficiaries" of the Plan Trust. The designated Beneficiaries consisted solely of holders of allowed claims, who by virtue of their Beneficiary status were entitled to Plan distributions.[4]

The Plan Trust's assets included causes of action and claims referred to as "Estate Claims." The Plan broadly defined "Estate Claims" as "any and all claims and causes of action that constitute property of the Estate including, but not limited to, . . . any causes of action or claims for recovery of any amounts owing to the Debtor or the Estate." In turn, the Plan specified that "'Estate' means the Debtor's bankruptcy estate created under

---

[4] Under the Plan, the Plan Trust had a fixed "initial" duration of six years, subject to extension upon Plan Trustee request and bankruptcy court approval. The Plan further provided: "[u]pon the termination of the Plan Trust, . . . all of the Plan Trust's assets shall be re-vested in the Reorganized Debtor or such other original owner of such assets."

Section 541 of the Bankruptcy Code in the Case." The Plan also contained roughly a half dozen provisions making it abundantly clear that Estate Claims were assets of the Plan Trust and the Plan Trustee held exclusive authority over such claims. The following Plan provision is representative:

> On or after the Effective Date, the Plan Trustee shall have sole authority and responsibility for investigating, analyzing, commencing, prosecuting, litigating, compromising, collecting, and otherwise administering . . . Estate Claims. . . . Unless an Estate Claim is expressly waived, relinquished, compromised or settled as provided or identified in the Plan, the Confirmation Order, or any other order of the Court, the Plan Trust expressly reserves any Estate Claim for later adjudication.

## B. The Plan Trustee's discovery of TNI's misconduct and the immediate fallout therefrom.

Sharp's control over estate administration and TNI's role managing ECF's operations ended on the effective date of the Plan in September 2018. In October 2018, the Plan Trustee began a review of ECF's transactions with its vendors, including postpetition, preconfirmation vendors Hospitality Merchandise (''Hospitality'') and Restaurant Extensions (''Extensions''). According to the Plan Trustee, TNI's principal Ancill formed Hospitality and Extensions postpetition and then caused them to sell excessive amounts of goods to ECF and overcharged it in the amount of $660,841.55. Based on this conduct, and TNI's failure to disclose its lack of disinterestedness to the bankruptcy court and interested parties, the Plan Trustee successfully opposed TNI's third and final fee application.

6

Additionally, the bankruptcy court ordered TNI to disgorge $376,550 in fees received by TNI on its first and second interim fee applications.

**C.   ECF initiates litigation against Sharp and DSI in state court.**

In November 2022, roughly four years after the Plan Trustee sought and obtained disgorgement of TNI's fees, ECF filed a complaint against Sharp and DSI (collectively, "Sharp") in the Los Angeles County Superior Court. The complaint sought damages for fraud (intentional and negligent misrepresentation), breach of fiduciary duty, and aiding and abetting fraud and breach of fiduciary duty (against DSI).

ECF's allegations initially mirrored the points made by the Plan Trustee regarding TNI's overordering and overpayment of Hospitality and Extensions. However, ECF then alleged that Sharp knew or should have known that TNI was using affiliated entities including Hospitality, Extensions, and Touch Bistro to procure goods for ECF. It further alleged that Sharp failed to do anything to prevent TNI and Ancill from engaging in self-dealing transactions with their affiliates, to its detriment. According to ECF's state court complaint, Sharp had a duty under § 327(a) to disclose that TNI was not disinterested. Furthermore, the complaint stated that, under these circumstances, Sharp should not have verified and approved TNI's fee applications. It also broadly claimed that Sharp negligently permitted ECF's labor and supply costs to balloon during his tenure as chapter 11 Trustee.

7

**D.** **The motion for leave to sue Sharp, the bankruptcy court's denial of the motion, and the appeal to this Panel.**

Roughly a month after it filed the state court action, ECF moved for leave to sue Sharp outside the bankruptcy court pursuant to the *Barton* doctrine. Sharp opposed the motion.[5] According to Sharp, ECF lacked standing to sue him because the Plan vested authority to sue on account of Estate Claims exclusively in the Plan Trustee. Sharp additionally maintained that the motion needed to be denied because ECF violated the *Barton* doctrine by filing its state court complaint before seeking and obtaining leave from the bankruptcy court. Sharp also contended that the three-year limitations period for actions based on misrepresentation already had run, as well as the four-year limitations period for breach of fiduciary duty based on neglect. Finally, Sharp asserted that ECF had failed to set forth a prima facie case in support of any of its causes of action, so the motion for leave had to be denied.

The bankruptcy court denied ECF's motion for leave. It ruled that it held "exclusive jurisdiction" over all claims arising from Sharp's acts as the chapter 11 trustee. But the court additionally held that ECF lacked standing to assert affirmative claims against Sharp. It also noted: (1) the complaint appeared to be a collateral attack on its prior order granting Sharp's final

---

[5] ECF also filed a complaint against Sharp in federal district court. But the parties and the bankruptcy court focused on the state court complaint in addressing ECF's motion for leave to sue. Even so, the order denying the leave motion required ECF to dismiss both non-bankruptcy complaints.

fee application; (2) the stated claims appeared to be barred by the applicable statute of limitations; (3) ECF had violated the *Barton* doctrine by filing the complaint before obtaining leave; and (4) ECF had failed to present a prima facie case in support of any of its claims.[6]

On appeal, this Panel affirmed the denial of the motion for leave. Though the bankruptcy court believed that it had exclusive jurisdiction over challenges to Sharp's performance as chapter 11 trustee, we declined to decide the appeal on that basis. Instead, citing the factors articulated in *Kashani v. Fulton (In re Kashani)*, 190 B.R. 875, 886-87 (9th Cir. BAP 1995), we held that the record supported the bankruptcy court's decision to deny ECF leave to sue Sharp outside the bankruptcy court. *East Coast I*, 652 B.R. at 918-19. As an alternate basis for our affirmance, we held that ECF lacked standing to pursue the claims stated in its state court complaint. As we explained, the Plan vested all Estate Claims in the Plan Trust, only the Plan Trustee could pursue them, and ECF's causes of action constituted Estate Claims. *East Coast I*, 652 B.R. at 921.

### E. ECF's adversary proceeding against Sharp.

While the *East Coast I* appeal was pending, ECF filed an adversary proceeding in the bankruptcy court against Sharp. The complaint stated claims for fraudulent concealment, constructive fraud, fraud on the court,

---

[6] Despite its remarks regarding limitations periods and collateral attacks, the bankruptcy court explained that it was not rendering any substantive ruling on the merits of ECF's claims against Sharp.

9

and professional negligence. Similar to the state court complaint, the adversary proceeding complaint alleged that Sharp knew or should have known that Hospitality, Extensions, and Touch Bistro were affiliates of TNI and Ancill. The complaint asserted that Sharp wrongfully failed to prevent and disclose TNI's over-ordering goods from these affiliates and the affiliates' overcharging for those goods.

However, unlike the state court complaint, the adversary complaint also alleged a host of additional chapter 11 trustee misconduct. ECF alleged that Sharp failed to vet TNI and monitor its status as a limited liability company. According to ECF, if Sharp had done so, he would have learned that, at the time he employed TNI, it was delinquent in submitting certain information to the California Secretary of State and later was suspended from operating in California. ECF further alleged that TNI and Ancill were unknown in restaurant management circles but Sharp failed to consider alternatives to hiring TNI. ECF additionally assailed Sharp for allegedly failing to cooperate with Hudson and the OCC—and for overseeing ECF's finances, taxes, and labor issues in an inept and incompetent manner. ECF asserted that as a direct result of Sharp's incompetence (and his failure to disclose his incompetent oversight and the resulting harm), Sharp caused ECF to suffer roughly $20 million in damages.[7]

---

[7] ECF specifically maintained that Sharp caused ECF to suffer the loss of roughly $15 million in Franchise Tax Board tax credits when he authorized the firing of between 75 and 100 of ECF's employees. This was in addition to the alleged $5 million in

**F.** **The court's dismissal of the adversary proceeding and ECF's motion to reconsider.**

Promptly after ECF commenced the adversary proceeding, the bankruptcy court duly issued its form summons to ECF for service. The summons also provided notice that the court had scheduled a status conference for August 29, 2023. But ECF never served the summons and complaint.

Prior to the status conference, the bankruptcy court issued a tentative ruling. The court noted that "[t]his complaint appears to be a rehash of the complaint that was commenced in state court . . . that this court found was a violation of the *Barton* Doctrine. Plaintiff overlooks the fact that its violation of the *Barton* Doctrine was only one of several problems with this action." The court then incorporated a portion of its prior tentative ruling addressing ECF's *Barton* motion, which began by stating that ECF lacked standing to sue Sharp but also observed that any such action was barred by the statutes of limitations and issue preclusion. The court then concluded its tentative ruling for the status conference by stating that it would issue an order to show cause why the adversary proceeding should not be dismissed for the reasons discussed in the prior tentative ruling for the

---

damages ECF claimed arose from Sharp's other missteps. These missteps allegedly disrupted ECF's regular business practices and caused ECF to incur excessive and unnecessary operating and administrative costs.

*Barton* motion and based on quasi-judicial immunity.

ECF did not appear at the August 29, 2023 status conference. The bankruptcy court noted ECF's failure to appear and recognized that it had not served the summons and complaint. The court referenced the Panel's affirmance of the denial of ECF's *Barton* motion. It also referenced the concerns it had raised in its status conference tentative ruling, including lack of standing, collateral estoppel, and statutes of limitations.

At the same time, the court acknowledged it had stated in its status conference tentative ruling that it would enter an order to show cause why the adversary proceeding should not be dismissed. But the court concluded that the order to show cause was unnecessary in light of ECF's failure to serve the complaint and appear at the status conference, which it construed as a voluntary abandonment of the adversary proceeding. The bankruptcy court entered its order dismissing the adversary proceeding on August 30, 2023, "[f]or the reasons set forth on the record at the time of hearing[.]"

ECF timely moved for reconsideration of the dismissal order under Rule 9023, which incorporates by reference Civil Rule 59. It argued that the dismissal constituted clear legal error and was manifestly unjust. As ECF reasoned, its failure to serve the summons negated the August 29 status conference the court had calendared on the docket as of June 20, 2023. Alternatively, ECF insisted it had no way of knowing that the status conference would proceed when it had not served the summons and when the court's tentative ruling stated that the court would continue the status

conference to be held at the same time as the hearing on the anticipated order to show cause.[8] ECF also contended that the court deprived it of any meaningful opportunity to address the standing, preclusion, and limitations issues raised in the bankruptcy court's tentative ruling. In addition, it asserted that it was manifestly unjust for the bankruptcy court to dismiss the adversary proceeding for lack of prosecution without first considering the five factors set forth in *Bautista v. Los Angeles County*, 216 F.3d 837, 841 (9th Cir. 2000). Finally, ECF maintained that the court should have given it some opportunity to amend its complaint to address the court's standing, preclusion, and limitations concerns.[9]

Though he had not been served with the summons and complaint, Sharp appeared and responded to ECF's reconsideration motion. Sharp stated that he took no position on whether the dismissal should be set aside but nonetheless claimed that the adversary proceeding was frivolous and filed to harass him. He further opined that ECF consciously disregarded the court's status conference procedures when it elected to ignore the duly-scheduled status conference.

At the hearing on the reconsideration motion, the court initially

---

[8] ECF conceded at oral argument that it did not know of the tentative ruling posted by the bankruptcy court before the status conference.

[9] ECF also requested issuance of an alias summons and moved to extend the 90-day deadline under Civil Rule 4(m) for it to serve the summons and complaint on the defendants. The bankruptcy court denied these requests in light of the dismissal of the underlying adversary proceeding.

observed that its local rules and procedures were unambiguous, the status conference had been set, it had not been taken off calendar, and ECF had a clear duty to appear at the status conference. But the court then indicated that its dismissal was only partly based on the failure to appear. The court explained that dismissal was appropriate based on the continuing standing, preclusion, and limitations problems first identified when it denied ECF's *Barton* motion. The court explained that it might have been willing to issue an order to show cause to give ECF an additional opportunity to address the standing, preclusion, and limitations problems if ECF had appeared at the status conference. In light of ECF's failure to appear, however, the court concluded that it was appropriate to dismiss the case because "we already went through all of this," and "[t]he action that the debtor seeks to prosecute is entirely lacking in merit."

In responding to the court's comments, ECF argued that it "should have an opportunity to address your questions in the context of a motion to dismiss or a summary judgment." The court then asked ECF for an offer of proof, which led to a colloquy between the court and ECF's counsel regarding ECF's standing and other issues. At the end of the colloquy, the court held that its observations and reasoning stated at the outset of the hearing justified dismissal.

On October 5, 2023, the bankruptcy court entered its order denying the Rule 9023 motion. On that same date, the court denied ECF's motion for more time to serve the complaint and an alias summons. ECF timely

14

appealed both orders, as well as the order dismissing the adversary proceeding.

## JURISDICTION

The bankruptcy court had subject matter jurisdiction under 28 U.S.C. § 1334. We have jurisdiction under 28 U.S.C. § 158.

## ISSUES

1.     Whether the bankruptcy court erred when it dismissed ECF's adversary proceeding.

2.     Whether the bankruptcy court abused its discretion when it denied ECF's motion for reconsideration under Rule 9023 and its motion for extension of time to serve the summons and complaint.

## STANDARDS OF REVIEW

We review de novo the bankruptcy court's dismissal for lack of Article III standing. *See Clifton Cap. Grp., LLC v. Sharp (In re E. Coast Foods, Inc.) ("East Coast II")*, 80 F.4th 901, 905 (9th Cir. 2023). When we review a matter de novo, we give no deference to the bankruptcy court's decision. *Francis v. Wallace (In re Francis)*, 505 B.R. 914, 917 (9th Cir. BAP 2014).

Dismissals based on a failure to prosecute, or on a local rules violation, are reviewed for an abuse of discretion. *Olomi v. Tukhi (In re Tukhi)*, 568 B.R. 107, 112 (9th Cir. BAP 2017). We also review for an abuse of discretion the bankruptcy court's denial of ECF's reconsideration motion. *Carruth v. Eutsler (In re Eutsler)*, 585 B.R. 231, 235 (9th Cir. BAP 2017). The bankruptcy court abused its discretion if it applied an incorrect legal rule

15

or its factual findings were illogical, implausible, or without support in the record. *TrafficSchool.com v. Edriver Inc.*, 653 F.3d 820, 832 (9th Cir. 2011).

**DISCUSSION**

**A.     Standing doctrine and applicable procedure.**

Our resolution of this appeal hinges on ECF's standing to sue Sharp. Standing is a threshold question in every federal case. *Warth v. Seldin*, 422 U.S. 490, 498 (1975); *East Coast II*, 80 F.4th at 905. The standing inquiry typically considers both constitutional and prudential concerns. *Warth*, 422 U.S. at 498-99. However, when the plaintiff fails to allege sufficient facts to establish Article III standing, prudential standing limits "are beside the point." *Fleck & Assocs., Inc. v. Phoenix*, 471 F.3d 1100, 1105 (9th Cir. 2006). A plaintiff has constitutional or Article III standing when: "(1) the plaintiff suffered an injury in fact, i.e., one that is sufficiently 'concrete and particularized' and 'actual or imminent, not conjectural or hypothetical,' (2) the injury is 'fairly traceable' to the challenged conduct, and (3) the injury is 'likely' to be 'redressed by a favorable decision.'" *Bates v. United Parcel Serv., Inc.*, 511 F.3d 974, 985 (9th Cir. 2007) (quoting *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560–61 (1992)).

"In the absence of standing, a federal court lacks subject matter jurisdiction over the suit." *Righthaven LLC v. Hoehn*, 716 F.3d 1166, 1172 (9th Cir. 2013) (cleaned up). Because it is jurisdictional, the bankruptcy court appropriately raised the standing issue *sua sponte*. *See Fleck & Assocs., Inc.*, 471 F.3d at 1107 n.4. Indeed, even if the bankruptcy court had not

16

addressed ECF's standing, we would have an independent duty to assess not only our own jurisdiction but also the bankruptcy court's. *See Steel Co. v. Citizens for a Better Env't*, 523 U.S. 83, 95 (1998); *Aheong v. Mellon Mortg. Co. (In re Aheong)*, 276 B.R. 233, 239 (9th Cir. BAP 2002).

To satisfy Article III standing concerns, the plaintiff must at the pleading stage allege sufficient facts plausibly demonstrating each element of Article III standing. *Jones v. L.A. Cent. Plaza LLC*, 74 F.4th 1053, 1057 (9th Cir. 2023) (citing *Spokeo, Inc. v. Robins*, 578 U.S. 330, 338 (2016)). When the plaintiff fails to do so, "the complaint is subject to dismissal at the outset ... upon the court's own inquiry." *Id.* (citation omitted). When assessing the complaint's standing allegations at the pleading stage, the court considers them in the same manner it would consider the complaint's allegations for purposes of reviewing the complaint's sufficiency under Civil Rule 12(b)(6). *See id.* at 1057-58. Thus, we must accept as true all well-pled, material factual allegations. *Thomas v. Mundell*, 572 F.3d 756, 760 (9th Cir. 2009); *Fleck & Assocs., Inc.*, 471 F.3d at 1102 n.2. But conclusory allegations are not sufficient to establish standing. *Brown v. Bank of Am., N.A.*, 2014 WL 12707378, at *1 (C.D. Cal. Feb. 24, 2014) (citing *Lopez v. Candaele*, 630 F.3d 775, 787 (9th Cir. 2010)), *aff'd*, 660 F. App'x 506 (9th Cir. 2016). Similarly, allegations contradicted by documents referenced in the complaint or that are properly subject to judicial notice will not preclude dismissal. *Lazy Y Ranch Ltd. v. Behrens*, 546 F.3d 580, 588 (9th Cir. 2008) (citing *Sprewell v. Golden State Warriors*, 266 F.3d 979, 988 (9th Cir. 2001)).

**B. ECF's lack of standing supports the bankruptcy court's dismissal.**

The bankruptcy court repeatedly ruled that ECF lacks standing to pursue the types of claims it asserted in both its state court complaint and its adversary proceeding complaint. Furthermore, this Panel in its prior decision agreed with the bankruptcy court's initial ruling that ECF lacked standing. We specifically held:

> [T]he bankruptcy court stated that ECF lacks standing to sue the Trustee, because the Plan vested all estate claims in the plan trust, and only the Plan Trustee could pursue those claims. We agree; the Plan clearly provided that "Estate Claims," including "any causes of action or claims for recovery of any amounts owing to the Debtor or the Estate," were property of the estate, did not revest in ECF, and were under the Plan Trustee's exclusive control. This is an independently sufficient reason to affirm the court's decision.

*East Coast I*, 652 B.R. at 921. Our prior holding is law of the case. *See Am. Express Travel Related Servs. Co. v. Fraschilla (In re Fraschilla)*, 235 B.R. 449, 454 (9th Cir. BAP 1999). We typically follow our law of the case. *Id.*

As the bankruptcy court correctly recognized, the current claims present the same standing issue as the similar state court causes of action. They all are based on alleged injuries to the bankruptcy estate during Sharp's preconfirmation administration of ECF as the chapter 11 trustee. As explained above, the Plan vested such claims in the Plan Trustee. The Plan further gave the Plan Trustee exclusive authority to pursue and dispose of

18

such claims.[10]

The Plan could have provided for all property of the estate simply to revest in the reorganized debtor on the effective date. But it did not. Instead, the confirmed Plan created a trust which specifically carved out assets of the estate from revesting in the reorganized debtor. Upon the effective date, certain bankruptcy estate assets, including the Estate Claims, were transferred to the Plan Trust for the Plan Trustee to administer and eventually distribute.

### 1. ECF's claims against Sharp are property of the bankruptcy estate and hence are "Estate Claims" held by the Plan Trust.

ECF contends that the claims against Sharp arose postpetition and are not property of estate. Therefore, it argues, the claims against Sharp are not Estate Claims within the meaning of the Plan. However, § 541(a)(7) includes within the Bankruptcy Code's definition of property of the estate, "[a]ny interest in property that the estate acquires after the commencement of the case." ECF argues that any property acquired postpetition must be traceable to or arise from estate property to constitute property of the estate (and therefore be an Estate Claim) under § 541(a)(7). This is a partially correct albeit incomplete statement of our precedent. In *MacKenzie v. Neidorf (In re Neidorf)*, 534 B.R. 369, 371-72 (9th Cir. BAP 2015), we held that

---

[10] Any attempt by ECF to allege facts inconsistent with the plain and unequivocal terms of the Plan would be ineffectual. The Plan is both referenced in ECF's adversary complaint and is properly subject to judicial notice. *See Lazy Y Ranch Ltd. v. Behrens*, 546 F.3d at 588; *Sprewell*, 266 F.3d at 988.

19

"for the after-acquired interest to be considered property of the estate under § 541(a)(7), the interest (1) must be created with or by property of the estate; (2) acquired in the estate's normal course of business; or (3) otherwise be traceable to or arise out of any prepetition interest included in the bankruptcy estate."

Without citing any authority, ECF baldly maintains that its claims against Sharp for the mismanagement of the debtor's prepetition business are not after-acquired property of the estate under § 541(a)(7) because ECF had no prepetition relationship to Sharp. This argument ignores Sharp's relationship to the bankruptcy estate. Sharp was the chapter 11 trustee of the bankruptcy estate and was responsible for the estate's administration and for ECF's operations while in chapter 11. Inherently, the ongoing business of the estate was property of the bankruptcy estate, and any mismanagement of that business falls squarely within § 541(a)(7).

Indeed, ECF's complaint recognizes as much. ECF specifically alleged that Sharp's misconduct harmed the estate either by increasing its expenses, decreasing its income, or diminishing the value of its assets while operating in chapter 11. Any postpetition, preconfirmation harm to the estate's income, expenses, and assets injured the bankruptcy estate rather than ECF personally. When, as here, the asserted misconduct allegedly harms the estate's assets or interests rather than the debtor's personal assets or interests, a legal claim (even if accruing postpetition) belongs to the bankruptcy estate under § 541(a)(7). *O'Dowd v. Trueger (In re O'Dowd)*,

20

233 F.3d 197, 204 (3d Cir. 2000); *Winick & Rich, P.C. v. Strada Design Assocs., Inc. (In re Strada Design Assocs., Inc.)*, 326 B.R. 229, 239–40 (Bankr. S.D.N.Y. 2005).

We recognized this principle in *Solano v. Magnum Prop. Invs. LLC (In re Solano)*, 2020 WL 4280662, at *5-6 (9th Cir. BAP July 24, 2020), *aff'd*, 854 F. App'x 781 (9th Cir. 2021). In *Solano*, the plaintiff debtor commenced an adversary proceeding attacking the postpetition foreclosure of his house and alleging fraud and other misconduct against the purchaser and additional parties. *Id.* at *2-3. The bankruptcy court dismissed the adversary proceeding based on the debtor's lack of standing. *Id.* at *3. Debtor appealed, and we affirmed. In upholding the bankruptcy court's standing ruling, we pointed out that debtor's claims arose out of the postpetition sale of the debtor's house, which was property of the estate, and the misconduct alleged by debtor pertained to the postpetition sale of the house. Therefore, the postpetition causes of action were property of the estate pursuant to § 541(a)(7). *Id.* at *5. We further reasoned:

> Although Debtor's alleged fraud claims are predicated on his premise that no sale occurred, he suggests that the Property was no longer property of the estate after Magnum purchased it at the foreclosure sale. But, Debtor does not explain how the claims against the purchaser vested in Debtor upon sale of the Property. **The alleged fraudulent sale would harm the estate's interest in the Property, not Debtor's, and the estate did not abandon the potential claims**.

*Id.* at 6 (emphasis added); *see also Ehrenberg v. Roussos (In re Roussos)*, 2016

21

WL 5349717, at *12 n.12 (Bankr. C.D. Cal. Sept. 22, 2016) (similarly holding that the debtors lacked standing over "fraud on the court claim" because the alleged misrepresentations were made "in connection with the administration of the Properties, an asset of the estate.").

In sum, ECF alleged injury to the bankruptcy estate rather than to the debtor's property. As a result, the claims against Sharp belonged to the estate under § 541(a)(7) before plan confirmation. Upon confirmation, those claims became Estate Claims belonging to the Plan Trust. Consequently, ECF's scope of Estate Claims argument must fail.

## 2. Third-party beneficiary doctrine is irrelevant to this appeal.

ECF's other standing-related arguments are hardly worthy of mention. Citing *Lucas v. Hamm*, 56 Cal.2d 583, 590 (1961), ECF argues that Sharp is merely an "incidental beneficiary" of the Plan terms vesting Estate Claims in the Plan Trust, and he cannot enforce those Plan terms. This argument is frivolous. Assuming without deciding that third-party beneficiary doctrine has any relevance to the enforcement of a confirmed plan, this doctrine generally permits an intended beneficiary to enforce an **unperformed promise** set forth in a contract even though the third-party beneficiary is not a contracting party. *See Goonewardene v. ADP, LLC,* 6 Cal. 5th 817, 828-32 (2019).

Sharp is not seeking to enforce unperformed Plan terms. Rather, he has been sued by ECF. It is incumbent on ECF to establish its Article III standing and that it is suing on its own rights. But ECF is ignoring the

22

binding effect of the Plan. Any postconfirmation right ECF otherwise might have held to sue Sharp was disposed of by the Plan, which expressly conveyed the Estate Claims to the Plan Trust and vested the Plan Trustee, not ECF, with the right to sue. Whether Sharp was a party to the Plan or an incidental beneficiary of the Plan is irrelevant to ECF's standing to sue.

### 3. ECF's Plan Trustee acquiescence theory also lacks merit.

ECF's only other standing-related argument concerns the Plan Trustee's purported acquiescence to ECF pursuing the claims against Sharp. ECF did not allege the Plan Trustee acquiesced in its adversary complaint. Nonetheless, if granted leave to amend, it potentially could do so. Even so, such purported acquiescence does not help ECF. According to ECF, the Plan Trustee exercised his absolute discretion and exclusive control over the claims against Sharp by "greenlight[ing]" ECF's prosecution of the claims. In ECF's own words, the Plan Trustee "interposed no objection [nor] asserted any exclusive right to pursue these claims," and the Plan Trustee characterized ECF's action as "a two-party dispute that does not affect the interests of the Plan Trust." ECF thus concludes that these facts give it standing to sue Sharp.

ECF's acquiescence theory is at odds with the Plan, which provides: "Unless an Estate Claim is expressly waived, relinquished, compromised or settled as provided or identified in the Plan, the Confirmation Order, or any other order of the Court, the Plan Trust expressly reserves any Estate Claim for later adjudication." In short, ECF's Plan Trustee acquiescence

23

theory is insufficient to confer standing on ECF to pursue claims owned by the Plan Trust.

## C. The bankruptcy court did not err by dismissing the adversary proceeding without leave to amend.

ECF contends that the bankruptcy court should not have dismissed its complaint before its right to amend under Civil Rule 15(a)(1) had expired. Civil Rule 15(a) is made applicable in adversary proceedings by Rule 7015. In relevant part, it permits a party to amend its pleading once "as a matter of course" within certain specified time constraints.[11]

ECF's argument is based on a mistaken reading of this Civil Rule. The rule simply does not restrict the bankruptcy court's authority to enter dismissal on appropriate grounds. Rather, the question is whether the court erred in denying leave to amend. Ordinarily, "leave to amend should be granted unless the court determines that the allegation of other facts consistent with the challenged pleading could not possibly cure the deficiency." *Schreiber Distrib. Co. v. Serv–Well Furniture Co.*, 806 F.2d 1393, 1401 (9th Cir. 1986); *see also Lopez v. Smith*, 203 F.3d 1122, 1127 (9th Cir. 2000). Here, we now have twice affirmed the bankruptcy court's rulings that the Plan Trust, not ECF, owns the Estate Claims, including any claims

---

[11] Civil Rule 15(a)(1) permits a litigant to "amend its pleading once as a matter of course" within: "(A) 21 days after serving it, or (B) if the pleading is one to which a responsive pleading is required, 21 days after service of a responsive pleading or 21 days after service of a motion under Rule 12(b), (e), or (f), whichever is earlier."

against Sharp for the administration of the chapter 11 estate. There is no set of facts that ECF plausibly could have alleged to establish its standing to sue Sharp. ECF certainly has not identified any such facts. Accordingly, ECF's amendment-related arguments do not justify reversal.

**D.    The bankruptcy court had authority to dismiss the adversary proceeding for lack of subject matter jurisdiction.**

ECF also asserts that under *Stern v. Marshall*, 564 U.S. 462 (2011), it was unconstitutional for the bankruptcy court to enter a dismissal with prejudice, fully and finally disposing of the merits of ECF's state law causes of action. *See id.* at 487. Here, however, we are only affirming the dismissal of ECF's adversary proceeding based on ECF's lack of standing. A jurisdictional dismissal simply does not implicate the Article III concerns addressed in *Stern*. *See id.* at 503. When, as here, the appellant could avail itself of a fully de novo review before an Article III judge, the bankruptcy court's decision does not infringe on the appellant's Article III interests. *See Exec. Benefits Ins. Agency v. Arkison (In re Bellingham Ins. Agency, Inc.)*, 702 F.3d 553, 566 (9th Cir. 2012), *aff'd sub nom.*, *Exec. Benefits Ins. Agency v. Arkison*, 573 U.S. 25 (2014).[12]

---

[12] Because we have concluded that *Stern* does not apply, we need not address whether ECF's conduct in the bankruptcy case and on appeal constituted express or implied consent to final determination of matters by an Article III court. *See generally Wellness Int'l Network, Ltd. v. Sharif*, 575 U.S. 665, 686 (2015) (holding that "Article III permits bankruptcy courts to decide *Stern* claims submitted to them by consent").

**E.     Dismissal for lack of standing did not deny ECF due process.**

Finally, ECF claims that the bankruptcy court's actions immediately before, during, and after the status conference denied it due process. To support its due process claim, ECF needed not only to establish a denial of a full and fair opportunity to be heard,[13] but also that it was prejudiced as a result, *see Rosson v. Fitzgerald (In re Rosson)*, 545 F.3d 764, 776-77 (9th Cir. 2008), *partially abrogated on other grounds as recognized by Nichols v. Marana Stockyard & Livestock Mkt., Inc. (In re Nichols)*, 10 F.4th 956, 962 (9th Cir. 2021).

Before the status conference, the court issued a tentative ruling indicating it would issue an order to show cause requiring ECF to explain why the adversary proceeding should not be dismissed and would continue the status conference pending the resolution of the show cause proceedings. The court then changed course at the status conference and decided to immediately dismiss the adversary proceeding. Shortly after the status conference, it issued its order dismissing the adversary proceeding with prejudice. Assuming without deciding that the bankruptcy court's actions implicated ECF's due process rights by initially depriving it of a meaningful opportunity to address the court's standing concerns, ECF has not established any prejudice. ECF has known that its standing to sue Sharp was a significant issue for the bankruptcy court since the court

---

[13] *See Mullane v. Cent. Hanover Bank & Tr. Co.*, 339 U.S. 306, 314 (1950).

denied ECF's *Barton* motion. ECF additionally knew by the time of the August 2023 status conference that *East Coast I* had held that ECF lacked standing to sue Sharp.

Perhaps more importantly, by the time ECF moved for reconsideration of the bankruptcy court's dismissal of the adversary proceeding in September 2023, it obviously had reviewed the bankruptcy court's prior rulings—tentative and final. It knew that its standing to sue Sharp was a critical jurisdictional issue. And yet its moving papers did little or nothing to explain how ECF plausibly could allege standing.

At the hearing on the reconsideration motion, the bankruptcy court addressed the standing issue. It also invited ECF to give an "offer of proof" to apprise the court as to how ECF could plead around the standing issue. ECF responded that it would allege and prove the Plan Proponents intended that the Plan Trustee would not have exclusive control over Estate Claims. We reject this argument based on the unequivocal Plan terms vesting such exclusive authority in the Plan Trustee discussed above. Under California contract law, the undisclosed intent of the Plan Proponents cannot supersede their stated intent as objectively manifested in the plain and unambiguous terms of the Plan. *See Founding Members of Newport Beach Country Club v. Newport Beach Country Club, Inc.*, 109 Cal. App. 4th 944, 956-960 (2003) (holding that extrinsic evidence of a party's undisclosed intent is immaterial in construing an unambiguous contract under California law, which adheres to the objective theory of contracts);

*see also Green Coin v. Khadavi (In re Khadavi)*, 2023 WL 2770982, at *5 (9th Cir. BAP Apr. 3, 2023) ("The language of a contract is to govern its interpretation, if the language is clear and explicit, and does not involve an absurdity." (quoting Cal. Civ. Code § 1638)), *aff'd*, 2023 WL 8596681 (9th Cir. Dec. 12, 2023). We previously have affirmed the bankruptcy court's reading of the Plan and its determination that its clear language vested the Plan Trustee with exclusive control over the Estate Claims, including any claims against Sharp for his actions and inactions as the chapter 11 trustee.

ECF's desire to rely on the unstated intent of the Plan Proponents is insufficient to establish reversible error as to due process or leave to amend. In the parlance of *Rosson*, there is no reason to think on this record that additional notice and opportunity for hearing would have changed the resolution of the standing issue. *In re Rosson*, 545 F.3d at 776-77. Consequently, without any demonstrable prejudice, any deprivation of due process ECF allegedly suffered does not justify reversal of the bankruptcy court's dismissal for lack of standing. *Id.*

**F.      To the extent of the jurisdictional dismissal, the bankruptcy court correctly denied ECF's Rule 9023 motion for relief.**

ECF has not specifically and distinctly argued that the bankruptcy court's denial of its reconsideration motion was, by itself, reversible error. Instead, as to every other issue it has raised on appeal, it has argued that a favorable ruling on any one of those issues would justify reversal of both the dismissal order and the reconsideration order.

Because we limit our affirmance of the bankruptcy court's dismissal to lack of standing, there is only one issue concerning reconsideration that we need discuss: whether anything in the reconsideration motion established grounds for reconsideration with respect to the bankruptcy court's determination that ECF lacked standing.

When a litigant's motion under Rule 9023 fails to demonstrate clear error, an intervening change in the law, or newly discovered evidence, denial of the motion is appropriate. *See In re Eutsler*, 585 B.R. at 239. As indicated throughout this decision, nothing in ECF's reconsideration motion established either that dismissal for lack of standing was improper or that ECF should have been granted leave to amend its standing allegations. Nor did ECF present newly discovered evidence or an intervening change in the law. Accordingly, the bankruptcy court did not abuse its discretion when it denied ECF's reconsideration motion.

Similarly, there was no need for an extension of time to serve the summons and complaint in a dismissed adversary proceeding.

## G. The bankruptcy court should not have dismissed the adversary proceeding on any ground other than lack of standing.

When the plaintiff lacks standing, the court should dismiss based on the absence of subject matter jurisdiction. *Fleck & Assocs., Inc.*, 471 F.3d at 1102. Typically, a jurisdictional dismissal should not be conjoined with a merits dismissal. *Id.* at 1106-07. This is particularly so when, as here, the court dismissed the action at the initial status conference—before either of

the defendants had been served. The bankruptcy court's concerns regarding issue preclusion and statutes of limitations are affirmative defenses that a defendant must assert, or they are waived. *See Pauma v. NLRB*, 888 F.3d 1066, 1073 (9th Cir. 2018); *Rivera v. Anaya*, 726 F.2d 564, 566 (9th Cir. 1984).

Nor was the bankruptcy court's dismissal of the action with prejudice to the underlying merits warranted to the extent it was based on a failure to prosecute or on a violation of the court's local rules. Dismissal for failure to prosecute only should be entered after a showing of unreasonable delay and consideration of the five factors identified in *Henderson v. Duncan*, 779 F.2d 1421, 1423 (9th Cir. 1986). *See In re Tukhi*, 568 B.R. at 114.[14] In turn, local-rules based dismissals must be supported not only by the *Henderson* factors but also by a determination that the plaintiff harbors a sufficiently culpable state of mind, and the penalty must be proportionate to the offense. *Id.* at 113.[15]

Here, the bankruptcy court did not specifically consider any of these

---

[14] The five *Henderson* factors are: "(1) the public's interest in expeditious resolution of litigation; (2) the court's need to manage its docket; (3) the risk of prejudice to the defendants; (4) the public policy favoring disposition of cases on their merits[;] and (5) the availability of less drastic sanctions." *In re Tukhi*, 568 B.R. at 113 (citing *Lee v. Roessler–Lobert (In re Roessler–Lobert)*, 567 B.R. 560, 573-74 (9th Cir. BAP 2017)).

[15] With respect to ECF's state of mind, the bankruptcy court's comments at the reconsideration hearing indicated that the court did not attribute ECF's failure to appear to any egregiously culpable state of mind but rather to counsel's lack of familiarity with the district's local rules and procedures, which differed from counsel's local practice in another district.

factors. We have discretion in appropriate cases to consider these factors ourselves as part of our appellate review, or we can vacate and remand, so that the bankruptcy court can consider the appropriate factors in the first instance. *See id.* at 113; *see also Zambrano v. City of Tustin*, 885 F.2d 1473, 1484 & n.32 (9th Cir. 1989). However, in light of the valid dismissal of the adversary proceeding on jurisdictional grounds, we consider it unnecessary for either the bankruptcy court or this Panel further to address either of these procedural grounds for dismissal. The dismissal here should have been based solely on ECF's lack of standing.

Therefore, we will MODIFY the court's dismissal order. The dismissal order's dispositive language should read as follows:

> IT IS HEREBY ORDERED that this Adversary No. 2:23-ap-01192-BB is DISMISSED for lack of standing, without leave to amend. But this dismissal is without prejudice to the substance of the claims set forth in the complaint and the right of the claims' true owner to pursue or otherwise dispose of such claims, if any remain viable, if so desired.

## CONCLUSION

For the reasons set forth above, we AFFIRM IN PART, MODIFY IN PART, AND AFFIRM AS MODIFIED.